**Gwendolyn GARLAND, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendants.**

**Civ. A. No. 80–73840.**

United States District Court,
E. D. Michigan, S. D.

Dec. 7, 1981.

Goldstein, Meklir, Schreier, Nolish & Friedman, P. C. by Jack A. Nolish, Southfield, Mich., for plaintiff.

Leonard R. Gilman, U. S. Atty., Karl R. Overman, Asst. U. S. Atty., Detroit, Mich., for defendants.

MEMORANDUM OPINION AND ORDER

COHN, District Judge.

### I.

This Social Security disability case is before the Court on defendant Secretary's objections to the Magistrate's Report and Recommendation that summary judgment be granted in favor of plaintiff.

Plaintiff filed applications for disability benefits in September 1978 and March 1979, each alleging a disability onset date of March 6, 1978. Both applications were initially denied administratively. After the second application was denied on reconsideration, plaintiff requested a *de novo* hearing which was held before an Administrative Law Judge (ALJ) June 30, 1980. After hearing the testimony of plaintiff, a vocational expert, and reviewing the medical evidence of record, the ALJ concluded plaintiff had the residual functional capacity to do her former light work as an automobile assembly line worker and so was not disabled. The Appeals Council affirmed September 10, 1980 and this action followed.

### II.

Plaintiff's primary basis for claiming disability is severe pain in both wrists and hands. The ALJ stated in evaluating the evidence that the medical record showed plaintiff suffering from carpal tunnel syndrome (pressure on the median nerve at the point at which it goes through the carpal tunnel of the wrist). He further noted:

"This impairment has caused the claimant symptomatology such as pain of the hands. The medical evidence supports

the claimant's testimony concerning the severity of such symptomatology."

(Tr. 13). The magistrate found this evaluation of the evidence inconsistent with the ALJ's ultimate conclusion that the "medically determinable evidence of record does not support the claimant's complaints of severe pain and residual functional limitations". (Tr. 15). The vocational expert testified that if plaintiff's pain was as severe as she claimed, she was totally disabled. (Tr. 86). Concluding that the ALJ's determination of non-disability was contrary to the ALJ's own evaluation of the evidence, the magistrate recommended summary judgment be granted in favor of plaintiff.

Defendant objects that the magistrate improperly substituted his own judgment of the facts for the ALJ's, which judgment was supported by substantial evidence. The Court concludes, after carefully reviewing the record and hearing the argument of counsel on November 20, 1981, that the magistrate applied the proper standard of review.

### III.

In judicial review of social security decisions, the ALJ's factual findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The Court of Appeals for this circuit has repeatedly held that pain alone can be disabling and has reversed ALJ decisions rejecting testimony of disabling pain supported by the medical record. *See, e.g., Noe v. Weinberger*, 512 F.2d 588, 595–96 (6th Cir. 1975); *Stamper v. Harris*, 650 F.2d 108 (6th Cir. 1981). Judge Freeman of this District has held that an ALJ must accept a claimant's testimony of disabling pain "at face value" unless contradicted by evidence in the record. *Huff v. Califano*, Unempl.Ins. Rep. (CCH) ¶ 16,073 (E.D.Mich.1978).

 The ALJ offered three reasons for rejecting plaintiff's testimony of disabling pain despite his own conclusion that her testimony, even as to the *severity* of the pain, was supported by the medical evidence. All three reasons are based solely on the ALJ's own observations during the hearing. First, he noted that none of the "signs" of chronic pain "such as drawn features, significant weight loss, poor overall health[,] observable impairment of the fingers and muscle atrophy" were apparent from his observation of plaintiff. Second, he found her testimony of pain in her hands and wrists lacked credibility because she also complained of "general pain all over her body". Finally, he apparently concluded that the "alertness, power of concentration, memory capability and normal dexterity in the upper extremities" exhibited by plaintiff at the hearing were somehow inconsistent with severe pain in her hands. (Tr. 14).

Plaintiff was carefully examined by three different doctors. (Tr. 144–45, 152–53, and 154–55). All confirmed the carpal tunnel syndrome. Dr. Cohen concluded his report by stating:

"She is disabled from resuming her usual work. I would recommend a regimen of physical medicine treatment for the relief of pain but the prognosis is guarded and some permanent disability must be anticipated."

(Tr. 53).

The ALJ did not conclude plaintiff's testimony of disabling pain lacked credibility because her demeanor or inconsistent testimony suggested she was lying or exaggerating, the kind of credibility determination by a fact-finder which is owed special deference under *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1980). Instead he relied on his own "objective" observations of the plaintiff's physical condition in preference to the medical evidence. An ALJ's lay opinion based solely on his own observations that a claimant does not exhibit outward signs of disabling pain is not substantial evidence sufficient to rebut uncontroverted testimony and medical evidence of disabling pain. *Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir. 1981). *See also Day v. Weinberger*, 522

F.2d 1154, 1156 (9th Cir. 1975); *Tyler v. Weinberger*, 409 F.Supp. 776, 789 (E.D.Va. 1976); *Roberts v. Califano*, 439 F.Supp. 188, 192 (E.D.Pa.1977).

As pointed out in *Tyler*, excessive reliance on what that court termed a "sit and squirm index"

> "will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations of pain or, worse yet, discourage them from exercising their right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel."

409 F.Supp. at 789.[1] Furthermore, a claimant has no opportunity to cross-examine the ALJ as to his lay diagnosis. *See Wilson v. Califano*, 617 F.2d 1050, 1054 (4th Cir. 1980) ("it is manifestly unfair for the ALJ to rely on assumptions and 'facts' which the claimant cannot, without reading the ALJ's mind, test or rebut".)

### IV.

Plaintiff does not object to the magistrate's recommendation that disability be determined as of December 21, 1978 although her applications alleged an onset date of March 6, 1978.

### V.

Accordingly, for the reasons stated on the record at the November 20 hearing and in this memorandum, the Court adopts the Magistrate's Report and Recommendation as the findings and conclusions of the Court except as stated herein. Defendant's motion for summary judgment is DENIED;

plaintiff's motion for summary judgment is GRANTED.

SO ORDERED.

---

1. An English judge has this to say about the limitations on a fact-finder's ability to discern the truth solely from observing the witness:

 "I question whether the respect given to our findings of fact based on the demeanour of the witnesses is always deserved. I doubt my own ability, and sometimes that of other judges, to discern from a witness's demeanour, or the tone of his voice, whether he is telling the truth. He speaks hesitantly. Is it the mark of a cautious man, whose statements are for that reason to be respected, or is he taking time to fabricate? Is the emphatic witness putting on an act to deceive me, or is he speaking from the fullness of his heart, knowing that he is right? Is he likely to be more truthful if he looks me straight in the face than if he casts his eyes on the ground, perhaps from shyness or a natural timidity? For my part I rely on these considerations as little as I can help."

 Sir Brian MacKenna, *Discretion*, Irish Jurist, 1974, pp. 1, 10.