**Stefano MORREALE, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. No. 84–CV–0007–DT.**

United States District Court, E.D. Michigan, S.D.

Oct. 12, 1984.

Roger R. Kline of Mancini, Schreuder, Kline & Conrad, P.C., Warren, Mich., for plaintiff.

Ellen E. Christensen, Asst. U.S. Atty., Detroit, Mich., for defendant.

## OPINION

COHN, District Judge.

### I.

In this social security disability case, plaintiff objects to the magistrate's recommendation that defendant's decision denying disability benefits be affirmed.

Plaintiff applied for disability insurance benefits on August 18, 1981 alleging disability due to right brachial plexus, Bell's palsy, Meniere's disease and extreme nervousness. The application was denied. An administrative law judge (ALJ) affirmed the denial after finding that while plaintiff was unable to perform his past relevant work as a stockman picker and packer at Chrysler Corporation, he had the residual functional capacity to perform sedentary work. The issue now is whether the ALJ's decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Gibson v. Secretary*, 678 F.2d 653, 654 (6th Cir.1982).[1]

---

1. After a hearing held on March 25, 1980 plaintiff was awarded a closed period of disability benefits from July 12, 1978 to October 1979 due to traction of his right shoulder and neck result-

## II.

The ALJ found that the medical evidence did not establish that plaintiff could not perform sedentary work and that his allegations of debilitation were not credible. In reaching these conclusions the ALJ made an improper credibility determination contrary to both Sixth Circuit law and the weight of the evidence and also failed to consider the combined effects of plaintiff's various impairments.

### A.

The erroneous credibility determination made by the ALJ related to plaintiff's claim that he suffered from Meniere's disease. This disease is defined as "[a] recurrent and usually progressive group of symptoms including progressive deafness, ringing in the ears, dizziness, and a sensation of fullness or pressure in the ears." *Taber's Medical Dictionary*, p. M–29. Meniere's disease is a listed impairment in 20 C.F.R. Appendix I, Subpart P, Regulation No. 4 § 2.07. Plaintiff claimed to suffer from severe dizziness accompanied by ringing in his right ear. This dizziness caused him to black out, become nauseous and necessitated his lying down twice a day for at least 5 minutes at a time. Plaintiff claimed both in his application for disability benefits and before the ALJ that his condition met § 2.07 of the listings. The ALJ did not find that plaintiff had an impairment equal to any listed impairment, nor did he credit any of plaintiff's testimony relating to his alleged Meniere's symptoms, finding specifically that "claimant's allegations of debilitation were not supported fully by the medical evidence or by his demeanor at the hearing. Subsequently (sic), they were not considered credible." (Tr. at 24).

The medical record which relates to plaintiff's dizziness includes letters from three examining physicians retained by the Secretary, testimony from a medical advis-

or, and a letter from plaintiff's treating physician. Dr. Fred Averbuch, an ENT specialist, stated in a letter dated October 2, 1981 that plaintiff

> continuously from at least 1975 and probably earlier has been having difficulty with vertigo. Initial ENG's (electronystagmograms) have showed end organ disorder in the right vestibular apparatus. This has been a rather consistent finding substantiated by a last electronystagmogram which was obtained 9/13/79. In addition Mr. Morreale has a high frequency neurosensory hearing loss in the right ear but there are no other physical abnormalities.

(Tr. at 352). Dr. Averbuch concluded that "[f]or the past several months the lightheadedness and vertigo that he has been suffering has been accentuated to the point where I do not feel he can be placed in a work position where either he or his fellow workers may be endangered .... I feel that the vertigo may well continue and therefore the prognosis would be very poor."

Dr. M. Ragheb, an examining physician, stated in a report dated October 2, 1981 that his impression of plaintiff's condition was "[d]izziness-ataxia due to organic vestibular disease secondary to #1." (Tr. at 345). Another examining physician, Dr. M. Seid Arabi, a neurologist, submitted a report dated September 21, 1982 (Tr. at 356). After an examination of plaintiff's hearing, Dr. Arabi found that plaintiff suffered from (among other impairments) "hearing loss, sensory and conduction in the right side related to damage in the inner ear [and] vertigo, related to injury of the vestibular system in the right side." Dr. Arabi concluded that plaintiff's "inner ear damage and also damage to the vestibular system and hearing organs would be permanent as far as I can say at the present time." (Tr. at 357).

---

ing from an injury. He was found able to perform sedentary work after this period. Since plaintiff did not file a timely appeal and a request for reopening was denied, the Secretary

and the ALJ considered the issue of plaintiff's disability prior to March 2, 1980 as *res judicata* and did not consider any evidence relating to his condition prior to that date.

The third physician retained by the Secretary, Dr. Benjamin Lewis, did not actually examine plaintiff but reviewed plaintiff's medical file. (Tr. at 376). As to plaintiff's complaints of dizziness, Dr. Lewis found that the electronystagmograms taken by Dr. Averbuch showed impairment of vestibular functions relating to high frequencies on the right. Dr. Lewis found, however, that there are "substantial reasons" to doubt the diagnosis of Meniere's disease. Dr. Lewis thought that it would be helpful to have all the material reviewed by a specialist, perhaps with an additional audiogram prior to the hearing. At the hearing, medical advisor Dr. James McKenna, a board certified ENT specialist, testified extensively as to plaintiff's ear problems (Tr. at 79–93). Dr. McKenna initially stated that, based on the medical record and testimony presented, he "would have no trouble in saying that [Meniere's disease is] present in this case." (Tr. at 81). Dr. McKenna concluded that plaintiff's condition met § 2.07 of the listings (Tr. at 88). Dr. McKenna stated that a slight disruption in hearing could produce a severe amount of dizziness and that plaintiff's tension and diabetes could also be aggravating factors to his hearing problems. Dr. McKenna also stated that unless plaintiff's current condition became somehow controlled by medication he would not be able to engage in any employment. (Tr. at 86).

The ALJ did not give credence to Dr. McKenna's conclusion and did not mention in his decision the fact that Dr. McKenna had stated that plaintiff met the listings. The ALJ did note that a progressive hearing disorder is required by § 2.07 and that Dr. McKenna did not state that there was any indication that plaintiff's hearing problem was progressive. However, Dr. McKenna actually said, in response to the ALJ's statement that plaintiff "doesn't meet though the progress loss of hearing," was "No, well, see it depends he has a hearing loss and we didn't know whether that will progress or not, we know what he has is permanent." (Tr. at 91).

■ The magistrate's report states that "most of the examining physicians agree that plaintiff suffers from ... Meniere's disease." This statement is inconsistent with the ALJ's actual finding, affirmed by the magistrate, that plaintiff's complaints were not supported by medical evidence. If it was as clear as indicated by the magistrate that plaintiff suffered from Meniere's disease, the ALJ would have erred in not finding that plaintiff met the listing in § 2.07. However, the ALJ has the right to resolve conflicting respectable medical opinions. *LeMaster v. Weinberger*, 533 F.2d 337, 349 (6th Cir.1976); *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir.1971). Given that Dr. Lewis doubted that Meniere's diagnosis, and none of the medical reports state conclusively that plaintiff's hearing loss was progressive, the medical record was not quite so clear as suggested by the magistrates' report and the ALJ could conclude that plaintiff did not meet the listings.

■ Although the ALJ did not err in his determining that plaintiff did not meet the listings, his determination that plaintiff's allegations of disabling dizziness were not credible based on the medical record was incorrect. Analogizing to Sixth Circuit cases dealing with credibility determinations regarding complaints of disabling pain, a claimant need not present clinical and diagnostic evidence that his symptoms would be inevitable. *Beavers v. Secretary of HEW*, 577 F.2d 383, 386 (6th Cir.1978). A medical condition supporting subjective complaints need only be "reasonably expected to produce those symptoms." 29 C.F.R. § 404.1529 (1983). A vocational expert testified that if plaintiff's testimony as to his impairments, particularly that testimony which related to his dizziness, was taken as credible plaintiff would be unable to perform any type of gainful employment. (See Tr. at 100–102). Even if there was reason to doubt whether plaintiff met the listings, the hearing impairments which are acknowledged by all the physicians of record clearly could be reasonably expected to produce the symptoms that he com-

plained of and therefore those symptoms were improperly discounted by the ALJ.

 The ALJ stated that while doctors found that claimant's dizzy spells preclude him from working at heights or being around dangerous machinery, no doctors concluded that plaintiff is completely disabled due to his dizzy spells. (Tr. at 22). While the conclusion of plaintiff's treating physician that he is disabled would be entitled to great weight if supported by objective medical findings, the absence of such a conclusion is not dispositive on the issue of whether a claimant is disabled. Since the medical evidence is clearly consistent with plaintiff's testimony as to his symptoms, the fact that no doctor concluded that plaintiff was totally disabled did not constitute substantial evidence supporting the ALJ's conclusion that his complaints were not credible.

> Since there is nothing in the record to cast doubt on plaintiff's credibility, the court is of the opinion that it must take the testimony at face value. This is not a case where someone is claiming the existence of [symptoms] where there is no discernable medical cause.

*Huff v. Califano,* Unemp.Ins.Rep. ¶ 16,063 (E.D.Mich.1978).

 The ALJ made the type of "sit and squirm" credibility determination specifically rejected in *Garland v. Secretary,* 528 F.Supp. 415 (E.D.Mich.1981). At Tr. p. 20, the ALJ states that "the claimant had no trouble hearing the conversational questions and answers during the two hour hearing." This is precisely the type of "objective observation of the plaintiff's physical condition in preference to the medical evidence" that was criticized in *Garland,* 528 F.Supp. 415, 416–17 (E.D. Mich.1981).[2] This observation was also irrelevant considering the fact that it was high frequencies, not speech frequencies in which plaintiff suffered his impairments.

### B.

 Even if the ALJ did not err in discounting plaintiff's claim of disabling dizziness, the ALJ erred in failing to consider the combined effects of his impairments. In addition to plaintiff's inner ear problems the medical record shows through various physicians' reports that he suffers from right facial paralysis as a result of Bell's palsy which causes problems with his right eye, radiating pain and tenderness in his right arm and shoulder and diabetes. As stated in *Hurst v. Schweiker,* 725 F.2d 53, 55–56 (6th Cir.1980)

> It is the view of this Circuit ... that disability may be established by a claimant suffering from a variety of medical problems, no one of which might be sufficiently disabling to prevent substantial gainful employment but when taken together have that result.

 The Secretary stated in her response to plaintiff's objections that the consensus of medical opinion does not support the proposition that he is disabled. The ALJ and the defendant find it significant that no doctor's reports conclude that plaintiff is completely disabled. However, the doctors who state that plaintiff is only par-

---

**2.** See also Tr. p. 17 "OBSERVATIONS OF THE PRESIDING OFFICER".

The Sixth Circuit has stated repeatedly that findings by the ALJ regarding the claimant's credibility cannot be the basis for a denial of benefits. The Court has said that

"credibility, especially with alleged pain, is crucial to the resolution of the claim [and] the ALJ's opportunity to observe the demeanor of the claimant is invaluable, and should not be discarded lightly." *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir.1981) (quoting *Beavers v. Secretary,* 577 F.2d 383, 387 (6th Cir.1978)). However, as later cases have made increasingly clear, where the claimant's subjective complaints are consistent with and substantiated by the medical evidence of record, the ALJ cannot discount the claimant's complaints solely on the basis of demeanor evidence. *King v. Heckler,* 742 F.2d 968 at 975 (6th Cir. August 30, 1984); *Martin v. Secretary,* 735 F.2d 1008, 1010 (6th Cir.1984); *Weaver v. Secretary,* 722 F.2d 310, 312 (6th Cir.1983). Indeed, the Sixth Circuit stated in the recent case *King v. Heckler, supra,* that in cases where the medical evidence does not conflict and is "entirely consistent" with the claimant's subjective complaints, "the importance of credibility findings is substantially decreased." At 975 n. 2.

tially disabled were also not looking at the totality of his impairments—i.e., they were specialists who only concluded that he was not totally disabled due to his right arm pain, or due to his dizziness. It is obvious that taking all of plaintiff's impairments together it is not realistic to find a residual functional capacity for sedentary work.

### III.

In conclusion, the ALJ's denial of benefits is not supported by substantial evidence in the record. The ALJ's decision was based on an improper credibility determination and on a failure to consider the combined effects of plaintiff's impairments. Plaintiff's motion for summary judgment is GRANTED and the Secretary's motion for summary judgment is DENIED. This case is REMANDED to the Secretary for a determination of benefits.

SO ORDERED.