Samuel H. WALTON, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 84–4020.

United States District Court,
C.D. Illinois,
Rock Island Division.

Nov. 19, 1984.
As Amended Feb. 19, 1985.

Glenn F. Ruud, Rock Island, Ill., for plaintiff.

Michael J. O'Leary, Asst. U.S. Atty., Peoria, Ill., Donna Morros Weinstein, Regional Atty., Dept. of Health and Human Services, Chicago, Ill., for defendant.

## ORDER

MIHM, District Judge.

The Plaintiff Samuel H. Walton filed suit against the Secretary of the United States Department of Health and Human Services ("the Secretary") seeking review under 42 U.S.C. § 405(g) of a final decision by the Secretary which denied Walton entitlement to a disability period and disability insurance benefits.

In order to qualify for a period of disability insurance benefits under the Social Security Act ("Act"), an individual must meet the insured status requirements under the Act, be under the age of sixty-five, file an application for disability insurance benefits and a period of disability, and be under a disability as defined in the Act. 42 U.S.C. §§ 416(i), 423; *Griffin v. Weinberger*, 407 F.Supp. 1388, 1392 (N.D.Ill.1975), aff'd. 539 F.2d 712 (7th Cir.1976). The determination of a disability which entitles a claimant to benefits under the Act is a two-step process: (1) there must be a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months, and (2) there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir.1980); *Lieberman v. Califano*, 592 F.2d 986 (7th Cir. 1979); 42 U.S.C. 423(d)(1)(A).

The burden of proof is on the claimant to establish his or her entitlement to disability insurance benefits. *Jeralds v. Richardson*, 445 F.2d 36 (7th Cir.1971). However, once a showing has been made that the Plaintiff can no longer perform the kind of work in which he or she was previously engaged, the burden shifts to the Secretary to prove that there exists other substantial gainful employment which the claimant could perform. *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir.1974). Judicial review of an Administrative Law Judge's findings pursuant to these standards is limited to a determination of whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Lechelt v. Cohen*, 428 F.2d 214 (7th Cir.1970). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

If there is a conflict in the evidence, the burden is upon the claimant to prove that he or she meets the requirements of eligibility. *Johnson v. Weinberger*, 525 F.2d 403, 407 (7th Cir.1975). In addition, an Administrative Law Judge's credibility determination regarding subjec-

tive evidence should be given considerable weight by the court. *Bibbs v. Secretary of Health, Education & Welfare,* 626 F.2d 526, 528 (7th Cir.1980).

▪ The district court must consider four elements of proof in determining whether a claimant is disabled under the Act: (1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and as observed by others; and (4) the claimant's age, education, and work history. *Johnson v. Weinberger,* 525 F.2d at 407.

Plaintiff filed an application for a period of disability and disability insurance benefits on April 21, 1982, alleging that he became unable to work on October 6, 1981, at age 35. His application was denied initially and on reconsideration after the Illinois State Agency, upon evaluation of the evidence by a physician and disability examiner, found that the Plaintiff was not under a disability. The Administrative Law Judge ("ALJ") before whom Plaintiff and his attorney appeared considered the case de novo and found that the Plaintiff was not under a disability. The ALJ's decision became the final decision of the Secretary when the Appeals Council approved it.

Plaintiff was 36 years old at the time of the administrative hearing. He has completed high school and has done some course work beyond the high school level. He has worked primarily as a truck driver and a machinist. He alleges disability due to back problems.

The following facts are taken largely from the Administrative Law Judge's opinion. They will be supplemented by statements and arguments of the Defendant and the Plaintiff.

Plaintiff last worked on October 6, 1981, and claims that he became disabled on that date due to injuries resulting in back surgery, as well as bursitis of the left hip and back. He is 74 inches tall and at the time of the hearing weighed 212 pounds. On October 6, 1981, he lifted a heavy object at work and developed severe pain in his back with radiation down the left leg. He was unable to straighten his leg without severe pain. He was hospitalized for four weeks for evaluation. He was referred to the University of Iowa where x-rays of the cervical and thoracic spines were completely negative and films of the lumbar spine revealed only minimal arthritis at L5. X-rays of the pelvis and left hip revealed no positive findings and a lumbar myelogram showed no abnormality. Physical examination revealed the absence of an ankle jerk on the left with diminished pain perception on the medical aspect of the left foot. At the time of his discharge, a diagnosis was deferred.

The claimant underwent physical therapy on a outpatient basis until early January of 1982 with some improvement and lessening of pain. He was rehospitalized on January 14, 1982, and underwent a laminectomy and removal of herniated disc at L5–S1. His leg pain was gone almost immediately after surgery, but he developed pain over the greater trochanter of the left extremity when attempting to stand. This was relieved by an injection of the "extremely tender trochanteric bursa. The claimant recovered except for a slight antalgic list to the left. By the time of discharge, he was ambulatory with a walker and needed no narcotics.

Examination in February of 1982 showed marked improvement and the Plaintiff indicated that his back felt fine. During March and April of 1982, however, Plaintiff presented himself on a number of occasions at the emergency room of his local hospital for treatment of post-laminectomy pain. On each occasion, he was treated with demerol and vistaril. On a couple of occasions, it was noted that malingering could be a problem. It was also noted that functional overlay might be involved in the claimant's symptoms. On April 29, 1982, the emergency room record states that he had been seen on numerous occasions for recurrent back pain and was "always seeking IM (intramuscular) narcotic injection". The physicians otherwise noted no objective evidence of Plaintiff's symptoms. On May 7,

1982, the claimant's treating physician anticipated further surgery.

On May 17, 1982, a state agency reviewing physician examined the medical information in the file and projected that by October of 1982 the claimant would have the ability to engage in a full range of light work activities.

On May 27, 1982, Plaintiff was admitted to the Mayo Clinic for evaluation. He complained of pain and weakness with intermittent episodes of numbness in his left leg. Physical examination revealed some reflex changes of L2-3. X-rays showed partial laminectomies of the lower lumbar spine. Plaintiff was evaluated in the department of psychiatry. There, a reactive depression with no evidence of psychosis was noted. It was believed that there was evidence of drug-induced behavioral changes from the analgesics, and the psychiatrist recommended a reduction or discontinuance of analgesic medication. At the time of his discharge, Plaintiff had improved but still had some muscular weakness and discomfort in his left hip. On July 1, 1982, Dr. Charles Reed of the Mayo Clinic indicated that there was no reason why the Plaintiff could not return to an ordinary job as soon as he desired, although the doctor recommended that the Plaintiff avoid heavy lifting.

In August of 1982, Plaintiff returned to the Mayo Clinic with reports of back pain and some left leg radiation. Neurological examination revealed no objective abnormalities other than a slight reduction in the left ankle reflex. Although the claimant had some giving away on manual muscle testing, the physician felt he was able to contract each muscle maximally when given the opportunity to do so. A reduction in sensation in the left perianal region and lower left extremity were noted which were not felt to be typical of dermatomal distribution. X-rays of the lumbar spine were normal except for evidence of the previous laminectomy. A subsequent myelogram showed only minimal anterior extra dural defect at the lumbosacral interspace which was felt to be post-operative in na-

ture. Spinal fluid obtained showed no significant abnormalities. The neurosurgeon did not believe that surgical intervention was indicated. The claimant was advised that there was no objective impairment of neurologic function upon which the physicians could make a recommendation for disability.

On October 18, 1982, claimant was hospitalized at Northwestern Memorial Hospital. Examination showed subjective decreased sensation to light touch in the entire lower left extremity. However, there was no muscle atrophy or reflex or motor changes. A CT scan revealed suspect minimal bulging of the annulus with no evidence suggesting herniation or encroachment upon the nerve routes or phecal sac at that level. An electromyogram was positive for left S1 radiculopathy. In a report dated October 28, 1981, one of Plaintiff's physicians stated that the electromyographic study consisted of an old radiculopathy of the left L5 nerve route but that a CT scan revealed that the previous surgery had given the Plaintiff adequate decompression of the spinal canal. There was evidence that the spinal cord itself was completely free, as well as the nerve routes. It was believed that the Plaintiff has a sacralization of the lumbar vertebra which, it was pointed out, can frequently cause low back pain. The physicians concluded that the Plaintiff was not a candidate for future surgery.

On October 22, 1982, the medical information in the file was reviewed by a state agency physician who agreed with the previous assessment that the Plaintiff could perform a full range of light work activities.

On January 3, 1983, the claimant was referred to the University of Iowa orthopedic clinic. The examining orthopedist agreed that spinal fusion was not indicated and that a body cast would not be helpful. It was noted that the Plaintiff's healing period was over and he was considered to have a 10% total body impairment. He was instructed to attempt further training through vocational rehabilitation.

A report from the Department of Rehabilitation Services, dated March 3, 1983, indicated that the Plaintiff's condition was "too severe" to benefit from rehabilitation services and training. A report dated April 4, 1983, was submitted by Dr. Reinwein, an orthopedic surgeon, stating that return to work as a truck driver was not recommended for the claimant but that the Plaintiff should be managed with vocational rehabilitation for employment other than truck driving. Dr. Reinwein also noted that the Plaintiff had undergone epidural blocks which were helpful and effective in relieving attacks of pain in the left leg.

At the hearing before the ALJ, the Plaintiff testified that it was difficult for him to go up and down stairs, in part because it is difficult to maintain his balance and because his left leg drags. He has fallen on more than one occasion. He stated that he can stand for five to ten minutes, sit about 15 minutes, and walk about 40 feet. He testified that he experiences severe back pain and muscle spasms and that his pain medication causes him to be drowsy. He experiences shooting pain down his left leg of such severity that it "brings tears to (his) eyes." He currently wears a TENS unit which helps to relieve pain. He is unable to bend or stoop at all. He uses crutches at all times and feels fairly well about two or three days a month. He has severe pain when attempting to defecate or void. He does not sleep well and naps throughout the day. His activities include reading, watching television, visiting occasionally in his home, and attending church functions when feeling well.

In his evaluation of the evidence, the ALJ stated that the intensity of symptoms and allegations of the Plaintiff far exceed that suggested by the specific clinical findings contained in the record. The ALJ believed that the claimant does experience some degree of pain and discomfort, but that there was no evidence to support the intensity and degree of pain alleged. The ALJ suggested that the claimant's demeanor as the hearing progressed and his general appearance suggested no significant observable physical signs which could be at-tributed to severe pain. The ALJ concluded that the claimant had the ability to perform a full range of sedentary work.

## PLAINTIFF'S ARGUMENTS

■ The Plaintiff argues that subjective testimony as to pain and suffering is not only probative on the issue of disability, but may serve as the basis for establishing disability even when unaccompanied by positive clinical findings or other objective medical evidence. *Velez v. Schweiker*, Unempl.Ins.Rep. (CCH), ¶ 17, 822 (S.D.N.Y. 1981), *Rosario v. Secretary of Health and Human Services*, 512 F.Supp. 874 (S.D.N.Y.1981), *Curtin v. Harris*, 508 F.Supp. 791 (D.C.N.J.1981). A finding of disability is not limited to cases where the individual involved is in intense pain every day. See *Olson v. Schweiker*, 663 F.2d 593 (5th Cir. 1981). The ability to work only a few hours a day or only on an intermittent basis is not the ability to engage in substantial gainful activity. *Cornett v. Califano*, 590 F.2d 91 (4th Cir.1978). The inability to perform residual light housework is an insufficient basis for deciding a claimant is able to perform substantial gainful activity. *Burnett v. Harris*, 512 F.Supp. 98 (D.C.Pa.1981).

■ In making a determination regarding ability to perform work, a judge must consider the side-effects of medication, i.e., those prescribed for pain which may make the claimant sleepy. *English v. Harris*, Unempl.Ins.Rep. (CCH), ¶ 17, 376 (N.D.Ala.1980). An ALJ must present clear and convincing reasons for rejecting medical or vocational testimony. *Wolf v. Schweiker*, Unempl.Ins.Rep. (CCH), ¶ 17, 782 (D.C.Ida.1981). An ALJ's lay opinion based solely on his own observations that the claimant does not exhibit outward signs of disabling pain is not substantial evidence sufficient to rebut uncontroverted testimony and medical evidence of disabling pain. See *Garland v. Secretary of Health and Human Services*, 528 F.Supp. 415 (E.D. Mich.1981).

Plaintiff urges the Court to weigh all of the evidence in this record against the legal

standards set forth above. Plaintiff argues that he may, through his own testimony, establish a disabling impairment. Plaintiff notes, in addition to the facts stated above, that he cannot drive a car, he cannot ride in a car for long periods and sit for very long, his TENS machine provides only marginal relief from pain, the pain does not go away even if he sits down to relieve pain when standing, the medications he takes to control pain make him drowsy all of the time, he cannot help with housework, his treatment has not helped over the past one and one-half years in that he basically has the same pain that he had at the time of his injury, and vocational rehabilitation indicated that they could not help him.

Plaintiff argues that even if he must produce convincing factual or clinical findings to support a conclusion that he has a disabling impairment, such medical evidence is in the record. All of his doctors agree that he has low back pain, and all note difficulties with radiation of that pain primarily into the lower left extremity. With respect to some of the physicians' belief that Mr. Walton could have been malingering, Plaintiff points to the psychiatric evaluation performed at Mayo Clinic which ruled out malingering and functional overlay as a problem.

Plaintiff argues that the fact that all of his doctors make specific findings of back pain with radiation down the left leg would of itself lead to a conclusion that Plaintiff is unable to return to work. Plaintiff contests the analysis by a state agency physician who found, on May 17, 1982, that the Plaintiff could handle light work. Plaintiff states that at that time, he had continued to experience severe pain since his injury, Mayo Clinic had found that he was in a great deal of pain, his myelogram showed a slight defect at L5–S1 and one doctor at Mayo Clinic indicated that "prudence would suggest a limited work schedule." Plaintiff points out that the myelogram findings are an objective finding.

Plaintiff refers to additional evidence constituting objective medical findings supporting his testimony. The report from Northwestern Memorial Hospital revealed an S–1 radiculopathy and decreased sensation to light touch in the lower left extremity. The report of Dr. Perlmutter on May 7, 1982 indicated that he did not feel the Plaintiff would be able to do any work for at least six months. Dr. Shaefer stated that the Plaintiff is qualified for a disability from the time when he first saw him in October of 1982. Dr. Shaefer noted sacralizations of the lumbar vertebra which he thought could be a cause of pain in the lower back. Plaintiff again states that this is an objective medical finding. Dr. Malvitz on January 6, 1983 found that Plaintiff is "unable to work" and recommended further training through vocational rehabilitation. The University of Iowa hospital found cog wheel weakness in the major lower muscle groups of the left leg and a decreased left ankle jerk.

Plaintiff also points to the March 3, 1983 report of the State of Illinois Department of Rehabilitation Services which found that the Plaintiff was not a good candidate for rehabilitation training. The report stated that the Plaintiff's condition was "too severe" to benefit from rehabilitation services. This report, Plaintiff argues, was completely ignored by the ALJ and neither the ALJ nor the Secretary present clear and convincing reasons for rejecting the vocational evidence. Finally, Plaintiff notes that the ALJ felt that his own observations of the Plaintiff did not support the severity of pain of which the Plaintiff complains. However, *Garland,* supra, specifically rejected the use of the "sit and squirm index" in evaluating the credibility of the Plaintiff.

SECRETARY'S ARGUMENTS

The Secretary argues that substantial evidence supports the Secretary's decision that minimally, the Plaintiff has the residual functional capacity for sedentary work and is therefore not disabled. The Secretary refers to the history of the Plaintiff's illness. She points out that subsequent to his surgery, his leg pain disappeared and he had a complete recovery of objective peripheral signs. Examination in February

of 1982 revealed marked improvement in the Plaintiff's condition. In April of 1982, his examination was entirely normal and Plaintiff stated that his back and leg pain were gone. Defendant notes that on July 1, 1982, Dr. Reed from the Mayo Clinic stated that with the exception of heavy lifting, there was no reason why the Plaintiff could not return to an ordinary job. Again, in August of 1982 when Plaintiff saw Dr. Sandok at the Mayo Clinic, the doctor found that the Plaintiff had no objective impairment of neurologic function upon which disability could be recommended. The Secretary refers to assessments by other doctors finding an absence of abnormalities in the Plaintiff's condition.

The Secretary argues that taken as a whole, the medical evidence establishes consistently and overwhelmingly that Plaintiff is able to perform work at the sedentary exertional level. Defendant further maintains that the Plaintiff has failed to even minimally objectify his complaints of severe and disabling pain.

ANALYSIS

■ Plaintiff's argument that subjective testimony as to pain and suffering may serve as a basis for establishing disability even when unaccompanied by objective medical evidence must be rejected based on the Social Security Disability Benefits Reform Act of 1984. Section 3(a)(1) of that Act amends § 223(d)(5) of the Social Security Act, 42 U.S.C. § 423(d)(5), by adding that:

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment which results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability."

■ Under the standard established by the statute and based on the evidence in this case, the Court concludes that the Secretary's findings are supported by substantial evidence. There do not exist medical findings showing the existence of a medical impairment which could reasonably be expected to produce the pain alleged and which, when considered with all evidence furnished, leads to the conclusion that the Plaintiff is under a disability. Further, while there are statements in the record by a couple of physicians that the Plaintiff is under a disability, there are also findings by a number of both treating and reviewing physicians that the Plaintiff is under no disability or is only slightly disabled and can return to work.

Accordingly,

1. The Plaintiff's Motion for Summary Judgment is DENIED.

2. The Defendant's Motion for Summary Judgment is GRANTED.

3. The decision of the Secretary is AFFIRMED.