892 F.2d 1043
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leslie K. LOY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-1481.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1990.
 
 Before MILBURN and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Leslie K. Loy appeals the denial of her claim for a period of social security disability insurance benefits. She first applied for disability benefits on August 20, 1986, alleging disability from December 1, 1984. After denial by the Social Security Administration, Loy requested a hearing before an ALJ who found her entitled to disability benefits from May 21, 1987, but not before. The Appeals Council later found her entitled to benefits from February 12, 1987. Claiming she has been disabled since December 1, 1984, Loy appealed to the district court, which upheld the Appeals Council's decision. Loy now appeals that decision, seeking disability benefits for the period from December 1, 1984 to February 12, 1987. We affirm the district court's decision.
 
 
 2
 Leslie Loy is a 31-year-old who has a visual and a hearing impairment. The visual impairment is a result of retinitis pigmentosa, a degenerative disease that constricts her vision to an ever-narrower range. The hearing impairment is a bilateral sensorineural hearing loss, a non-degenerating condition. She has worn a hearing aid since the age of five and her level of hearing has remained steady for several years. For the ten years prior to December, 1984, Loy worked as a check-out cashier in a grocery store; from April 1985 to November 1986 she worked 4-20 hours a week as a clerk-cashier/stocker at a toy store; and during November and December of 1986, she did part-time housekeeping work at a marina.
 
 
 3
 The regulations contained in 20 C.F.R. Part 404, Subpt. P., Appendix 1, § 203 (the "listings") set standards for visual disability:
 
 
 4
 2.03 Contraction of peripheral visual fields in the better eye.
 
 
 5
 A. To 10 degrees or less from the point of fixation; or
 
 
 6
 B. So the widest diameter subtends an angle no greater than 20 degrees; or
 
 
 7
 C. To 20 percent or less visual field efficiency.
 
 
 8
 Examination history: In 1984, Dr. James Knaggs, Loy's treating physician since 1971, reported in a letter to Dr. Edwin Novak that on examining Loy's eyes in March 1982, her central visual fields were constricted to 5-7 degrees in either eye. He also reported that on examining her in March 1983, her visual fields had not changed. In January 1984, Dr. Novak reported to Loy's employer that her vision was too poor for her to pass a driver's license eye test and that her condition was not subject to improvement. In September 1986, Dr. Timothy Hanley examined Loy's eyes, reporting severe visual constriction caused by retinitis pigmentosa which was correctable to 20/25 in each eye. Dr. Peter Oberhoff, a board certified ophthalmologist for the Secretary, subsequently examined the results of Dr. Hanley's tests and reported that they indicated, for the better right eye, constriction to between 10-15 degrees, widest diameter of 30 degrees, and visual efficiency of 24 percent.[1]
 
 
 9
 In October 1986 Dr. Timothy Van Every examined Loy's eyes and reported that her field of vision was, at best, 40 degrees. In February 1987, Loy was examined at Ferris State College of Optometry to determine if she could benefit from special lenses. Her visual field studies showed 10 degree central vision fields with isolated scotomas (blind or dark spots). Dr. Oberhoff subsequently reviewed the Ferris State studies and found that they indicated, for the better left eye, constriction of vision to 10-11 degrees, a widest diameter of approximately 20-22 degrees, and visual field efficiency of 16 percent. Dr. Van Every examined Loy again in May 1987, reporting that she had no more than 10 degrees of useful central vision. In a September 1987 letter to the Secretary, Van Every explained that the 40 degree figure contained in his October 1986 report was arrived at by adding the central field of vision of 20 degrees (or 10 degrees from fixation) to a "temporal island" of peripheral vision that existed in Loy's left eye. He added that this island was not considered useful vision. Thus, Loy's field of vision in October 1986 was restricted to 20 degrees (or 10 degrees from fixation). These values would indicate disability according to the listings. Because of Dr. Van Every's letter, Dr. Oberhoff reviewed the findings of the October 1986 examination. He disagreed with Van Every, concluding that they showed a visual field of 25 degrees, a widest diameter of 35 degrees and a visual efficiency of 24%. At no time did Dr. Oberhoff examine Loy personally.
 
 
 10
 The ALJ determined that Loy could not return to her former work as a cashier. At the hearing, vocational expert Dr. Donald Hecker testified that Loy had transferable skills beyond December 1984. The ALJ posed a hypothetical to Dr. Hecker: Given Loy's hearing impairment and assuming the visual impairment described in Dr. Van Every's October 1986 report, were there any jobs in the national economy that Loy could perform? The vocational expert responded that Loy could perform "comp clerk" (i.e. bookkeeping) jobs, of which there were many in the economy. He further specified that she could perform such jobs as long as she could see directly ahead of her and that she might have to use her finger or a ruler to follow the line on a ledger.
 
 1. Visual impairment
 
 11
 The dispute in this case is restricted to the period from December 1984 to February 1987. Dr. Oberhoff's review of the February 1987 Ferris State examination and of Dr. Van Every's May 1987 examination revealed visual constriction figures that fell within the regulatory listings for visual disability. This led the Appeals Council to extend benefits back to February 1987. Loy now seeks benefits extending back to December 1984. Thus, the only medical examinations that are relevant to the current dispute are (1) the Novak examination of January 1986, (2) the Hanley examination of September 1986, (3) the Van Every examination of October 1986, and (4) the Knaggs examinations of 1982 and 1983.
 
 
 12
 One way in which an applicant can show disability is by falling within the listings. Loy maintains that the Secretary ignored evidence that her visual impairment in the relevant times fell within the listings. She argues that the Secretary should have given greater weight to the opinion of her treating physicians than to the findings of Dr. Oberhoff, who never examined her. It is a principle of disability benefit law that the opinion of a treating physician is entitled to greater weight than that of a physician who treats a claimant only once or only reviews the claimant's records. Lashley v. Secretary of H.H.S., 708 F.2d 1048 (6th Cir.1983). It is also true, however, that the Secretary is not bound by the opinion of a treating physician where there is substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922, 927 (6th Cir.1987). Furthermore, under the circumstances in this case, the treating relationship is not as significant as it is in many disability benefits cases.
 
 
 13
 The figures for constriction of vision are based on objective results derived from electronic visual field studies conducted by the examining physician. The patient's field of vision is graphed on a chart designed for that purpose. The charts themselves are not in dispute in this case. It was Dr. Oberhoff's interpretation of the charts that differed from that of Dr. Van Every. Thus, the fact that Dr. Oberhoff did not personally examine the claimant is not as significant as it would have been in another case.
 
 
 14
 Dr. Novak did not report any quantitative results from his examination of January 1984. He merely reported that appellant's vision was too poor for her to qualify for a driver's license. That report gives insufficient evidence to conclude that appellant's visual impairment fell within the values in the listings. Similarly, Dr. Hanley did not quantitatively interpret the results of his examination of January 1986. Thus his report offers no evidence to rebut Dr. Oberhoff's subsequent finding that the results of that examination indicated values that fell outside the listings.
 
 
 15
 The two examinations that tend to rebut Dr. Oberhoff's findings are the Van Every examination of October 1986 and the Knaggs examinations of 1982-83. Appellant claims that the Secretary gave undue weight to Dr. Van Every's misleading report of October 1986 that appellant had a 40 degree field of vision. That may have been true of the ALJ, who made his decision before Dr. Van Every wrote the September 1987 explanatory letter to the Secretary, but the Appeals Council and the district court were aware both of the letter and of Dr. Oberhoff's review of the findings of the 1986 examination when they made their decisions. Dr. Oberhoff disagreed with Dr. Van Every's opinion that appellant's useful field of vision in October 1986 was 10 degrees from the point of fixation and 20 degrees at its widest diameter. After reviewing the results, Oberhoff stated:
 
 
 16
 A review of the visual field chart for the better left eye revealed a visual field constriction but not to 10 degrees or less from the point of fixation. Also the widest diameter is greater than 20 degrees.
 
 
 17
 Dr. Knaggs reported (in his 1984 letter to Dr. Novak) that in 1982 and 1983 Loy had central visual fields constricted to 5-7 degrees in both eyes. Dr. Oberhoff did not review the results of Dr. Knaggs's 1982 and 1983 examinations. The reliability of Dr. Knaggs's results is called into question, however, by the fact that retinitis pigmentosa is a progressive disease, yet Knaggs's results are worse than those from later examinations. If Knaggs's figures are correct, then appellant's vision improved from 1983 to 1987 (with the undisputed 1987 figure of 10-11 degree constriction). Given the nature of the disease, that is unlikely. Furthermore, appellant continued to work as a cashier until the end of 1984. If her field of vision was restricted to 5-7 degrees during that time, she would have had great difficulty in performing that job.
 
 
 18
 The Secretary also notes several miscellaneous facts that call into question appellant's claim that she was totally visually disabled after 1984. In October 1986, appellant's vision was correctable to 20/25 in the left eye and 20/20 in the right eye (from Dr. Van Every's examination); appellant listed her activities in August 1986 as including archery and volleyball; and appellant told the ALJ (in 1987) that she drove six miles into town "probably twice a week" (three years after Dr. Novak reported that her vision was too poor for her to pass the driving examination.).
 
 2. Ability to work
 
 19
 Because the ALJ found that appellant could not return to her former work as a cashier, the burden fell on the Secretary to show that she was capable of working in some other capacity during the relevant times. Appellant takes exception to vocational expert Hecker's finding that she could have worked in bookkeeping after December 1984. Hecker noted that appellant would need some skills to move from cashier to another position, but he felt that she had transferable skills, namely, dealing with customers, cashier skills, handling money, mathematical calculations and a certain amount of inventory control experience from her job in the toy store. Loy argues that what Hecker described are not "skills" but mere "aptitudes". This court, however, has recognized that operation of a cash register is not only a skill in itself, but that it also can teach a person "the skills necessary for dealing with the general public." Joniec v. Secretary of H.H.S., No. 87-1248 (6th Cir. May 16, 1988) (unpublished per curiam). Thus, the vocational expert's characterization of Loy's abilities as transferable skills was not clearly erroneous.
 
 
 20
 Appellant also objects to Hecker's specific assertion that she could have worked as a bookkeeper. She notes that Hecker stated she would need adaptive devices to work with 18" ledgers and would be restricted to work that did not require reaching or seeing other than straight ahead. Nevertheless, despite these restrictions, Hecker found that appellant could perform the job.
 
 
 21
 Although Dr. Van Every's explanatory letter was not written until after the hearing before the ALJ, Hecker's answer to the ALJ's hypothetical did not depend on Dr. Van Every's original characterization of appellant's field of vision as subtending 40 degrees, since Hecker based his opinion on the fact that appellant need only be able to see straight ahead. Reliance on a vocational expert to determine a claimant's ability to perform available work is appropriate where the "grid" of 20 C.F.R. Pt. 404, Subpt. P, App. 2 is inapplicable because appellant's impairment is non-exertional. Kimbrough v. Secretary of H.H.S., 801 F.2d 794, 796 (6th Cir.1986).
 
 
 22
 3. Combined effect of visual and hearing impairment
 
 
 23
 Appellant argues that the Secretary failed to take into account the combined effect of her visual and hearing impairment when determining whether she was capable of working. She notes that a disability may result from multiple impairments, no one of which alone would constitute a full disability. Morreale v. Heckler, 595 F.Supp. 907, 911 (E.D.Mich.1984). We note, however, that the Appeals Council's first finding of fact made reference to appellant's "severe impairments" (plural) and referred to them as a "combination of impairments"; that its third finding limited appellant's residual functional capacity in consideration of both visual and aural restrictions; and that the ALJ, in posing his hypothetical question to the vocational expert, asked him to consider the most recent evidence with respect to appellant's visual and aural impairments. An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the plaintiff does not meet the listings. Gooch v. Secretary of H.H.S., 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 108 S.Ct. 1050 (1988).
 
 
 24
 The Secretary's decision was supported by substantial evidence. There is evidence to suggest that Dr. Knaggs's result was unreliable. Dr. Oberhoff's review of the results from the October 1986 examination casts doubt on Dr. Van Every's conclusion that appellant's vision was restricted to a degree that would demand a finding of visual disability. Both doctors were apparently looking at the same visual field charts. Moreover, appellant offered no evidence to rebut the conclusion of the vocational expert that she could have worked after December 1984. Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Dr. Oberhoff's reviews apparently involved examining a diagram of the field of vision made by the examining physician and basing his calculations on that diagram