**John S. LYONS, Plaintiff–Appellant,**

v.

**SOCIAL SECURITY ADMINISTRATION, Defendant–Appellee.**

**No. 00–5361.**

United States Court of Appeals, Sixth Circuit.

Sept. 13, 2001.

Before MARTIN, Chief Judge, NELSON; Circuit Judge; and RICE, Chief District Judge.*

NELSON, Circuit Judge.

The plaintiff, John Lyons, here appeals a summary judgment in which the district court affirmed the Social Security Administration's denial of a claim for disability insurance benefits. Mr. Lyons asserts that in denying the claim the Commissioner of Social Security gave insufficient weight to evidence from three treating physicians and relied too heavily on the testimony of a non-treating medical expert.

Upon *de novo* review, we conclude that the Commissioner's determination is supported by substantial evidence. We shall therefore affirm the judgment in which that determination was upheld by the district court.

I

A.   Factual and Medical History.

John Lyons was born on April 5, 1932. After receiving a sixth grade education, Mr. Lyons worked briefly as a coal miner and mail carrier.  Between 1953 and 1974 he was employed by General Motors as a driver of cars from one area of an assembly plant to another.  He last worked on February 24, 1974.  His disability-insured status expired on December 31, 1978.

The plaintiff's current application for disability benefits (the most recent of three such applications) alleges total disability as a result of gastrointestinal problems, respiratory ailments, and heart disease.  The relevant medical evidence concerning each condition will be addressed separately.

1.   Gastrointestinal Problems.

Mr. Lyons first complained of abdominal pain, nausea, and vomiting on February 22, 1973.  Dr. John Molea admitted him to Epp Memorial Hospital for a battery of tests that ultimately resulted in a diagnosis of non-malignant duodenal and gastric ulcers.  He was released from the hospital on February 27, 1973, in satisfactory condition.

In May of 1974 Dr. Molea performed a subtotal gastrectomy with retrocolic anterior gastrojejunostomy.  Complications arose, and further surgery took place on June 10, 1974.  Mr. Lyons was discharged as much improved eight days later.

On November 27, 1974, Dr. Molea's notes first mention that the plaintiff suffered from an incisional hernia.  Mr. Lyons was hospitalized from April 7 to April 12, 1975, during which time the hernia was successfully repaired.  It appears that the gastrointestinal difficulties have not required any further medical attention.

2.   Lung Disease.

On February 22, 1974, on referral from Dr. Molea, the plaintiff visited Dr. Laszlo Posevitz, an osteopath, for the purpose of obtaining an evaluation of his respiratory condition.  At that time Mr. Lyons admitted to smoking two to three packs of cigarettes per day.  Following a bronchoscopy and right scalene mode biopsy, Dr. Posevitz concluded that the claimant had chronic bronchitis and moderate obstructive pulmonary distress.  Pulmonary function studies indicated that Mr. Lyons' pre-bronchodilator pulmonary capacities were between 52 and 69 percent of predicted values.  Mr. Lyons was advised to stop smoking.  He disregarded that advice, un-

---

* The Honorable Walter Herbert Rice, Chief District Judge for the Southern District of Ohio, sitting by Designation.

fortunately, and continued to smoke heavily. No other limitations were placed on his activities.

Dr. Molea conducted respiratory testing of the plaintiff on April 30, 1975. These tests revealed a reduced forced vital capacity, but no limitations on the plaintiff's activities were recorded in the doctor's notes.

On June 16, 1979, Dr. Richard O'Neill took an x-ray of Mr. Lyons' chest which demonstrated stage one coal worker's pneumoconiosis. Drs. William Anderson, Robert Hall, and Robert Penham concurred in this diagnosis. Again, no limitation on Mr. Lyons' activities were noted.

### 3. Heart Disease.

Mr. Lyons first complained of heart problems to Dr. Posevitz in 1974, describing intermittent episodes of heart flutter and a smothering feeling when he was shaving or using his arms. A chest x-ray taken on May 29, 1974, showed no evidence of gross cardiopulmonary pathology.

On April 30, 1983, Mr. Lyons was hospitalized by Dr. Robert Hall with a complaint of severe chest pain radiating to both upper extremities. Following tests, Dr. Hall concluded that the plaintiff's cardiac enzymes were normal. An EKG was normal as well. Mr. Lyons was given medication and released.

On June 11, 1991, the claimant was again hospitalized for chest pain, this time under the care of Dr. Thomas Whayne, Jr. Following a physical exam and testing, Mr. Lyons was advised to have coronary bypass graft surgery. The surgery was performed successfully on June 20, 1991.

### B. Procedural History.

Mr. Lyons first filed an application for disability insurance benefits on July 9, 1974. He alleged that he had become unable to work on January 28, 1974, due to respiratory problems and stomach ulcers. The application was denied initially and on reconsideration. Mr. Lyons then requested and received a hearing before an Administrative Law Judge. The ALJ denied the application on January 17, 1977, concluding that Mr. Lyons was capable of performing light work as a taxi driver or light truck driver. The Appeals Council denied review.

On May 7, 1977, Mr. Lyons filed a civil action in the United States District Court for the Eastern District of Kentucky challenging the denial of benefits. The court dismissed the plaintiff's claim on the merits, finding substantial evidence to support the ALJ's determination. No appeal was taken.

Mr. Lyons filed a second application for disability benefits on July 10, 1981. The application was largely identical to the first except that it alleged a disability onset date of February 24 rather than January 28, 1974. The application was denied initially and on reconsideration. Following a hearing, Mr. Lyons' second application was denied by an ALJ in a decision that we have been unable to find in the administrative record. The Appeals Council denied a request for review. No judicial review was sought as to this second application.

The plaintiff filed his current application for benefits on July 8, 1991. As amended, the application again alleged that Mr. Lyons had become unable to work on February 24, 1974. This time, however, heart disease was added to the list of ailments.[1]

---

1. As the Commissioner points out, Mr. Lyons' current application involves the same time period and the same facts and issues as did the earlier application. Under 20 C.F.R. § 404.957(c)(1), absent new facts, an ALJ would normally dismiss such a claim under

The application was denied initially and on reconsideration. On February 19, 1992, following a hearing, an ALJ likewise denied the application. In doing so, the ALJ misconstrued the application as claiming a disability onset date of February 16, 1990, a point in time when Mr. Lyons no longer had insured status.[2] Recognizing the ALJ's error, the Appeals Council remanded for further consideration. A second hearing was held on August 4, 1993. In a decision issued on February 24, 1994, the ALJ denied the claim, concluding Mr. Lyons could have performed a range of non-exertional medium level work as of December 31, 1978.

The claimant again sought judicial review. In a memorandum opinion and order issued on March 19, 1996, the district court remanded the case to the Commissioner for further proceedings. In doing so, the district judge noted that the ALJ had based his ruling largely on the opinion of a medical expert, Dr. Howard McWhorter, who had never personally examined Mr Lyons and who had failed to justify the difference of opinion between his conclusions and those of the claimant's examining and treating physicians.

A hearing was held before the ALJ on November 25, 1996, for the purpose of taking the testimony of another medical expert, Dr. Robert Marshall.[3] Dr. Marshall—whose qualifications include professorships at the Mayo Clinic, Oxford University, Marshall University, and West Virginia University, the publication of three books and some 200 papers, and terms as state governor of the American College of Physicians, state governor of the American College of Cardiology, president of the West Virginia Heart Association, and vice president of the Virginia Heart Association—reviewed and discussed in detail all of the medical evidence in the record. He concluded that when Mr. Lyons' insured status expired on December 31, 1978, Lyons could have done work of moderate physical intensity, subject to certain environmental restrictions.

In reaching his conclusion, Dr. Marshall noted that there was no medical evidence of cardiac disease prior to the expiration of the plaintiff's insured status. As for the gastrointestinal problems, Dr. Marshall observed that there was no medical evidence to suggest that the two operations performed to correct Mr. Lyons' ulcers had not been completely successful. There was no evidence of residual surgical effects, Dr. Marshall said.

As to Mr. Lyons' respiratory problems, Dr. Marshall disagreed with Dr. Posevitz's findings regarding the severity of the ailment. Dr. Marshall opined that the results obtained from spirometric testing conducted by Dr. Posevitz were miscalculated and did not employ appropriate testing techniques. Dr. Marshall therefore focused on tests conducted on September

the doctrine of *res judicata,* a final determination already having been issued. However, on October 7, 1993, the Commissioner issued new disability criteria for respiratory impairments. Under Social Security *res judicata* principles, the new respiratory criteria had to be applied back to the original alleged onset date. Accordingly, the Commissioner acknowledges that the plaintiff's claim is not barred by *res judicata.*

2. Mr. Lyons' insured status expired on December 31, 1978. The original version of his third application for benefits did indeed reflect a disability onset date of February 16, 1990, and therefore fell outside the period for which he was insured. However, the application had been amended before it reached the ALJ, although the ALJ seemingly failed to recognize this.

3. Dr. McWhorter had fallen ill by this point and was unable to supplement his previous testimony.

18, 1976, during a consultive medical examination by Dr. Jay Weiss. At that time Mr. Lyons' major complaints were shortness of breath and abdominal difficulties. Following a thorough physical examination, chest x-ray, and spirometric studies, Dr. Weiss concluded that there was evidence that Mr. Lyons had obstructive airway disease and a history of chronic bronchitis. Despite these problems, Dr. Weiss concluded that Mr. Lyons had the functional capacity to perform a moderate range of activities including sitting, walking, lifting and carrying up to 100 pounds occasionally, and performing work without environmental restrictions.[4]

A supplemental hearing was conducted before the ALJ on February 4, 1997. Dr. Owen, a vocational expert, testified at that time. The ALJ posed a hypothetical question incorporating the limitations to which Dr. Marshall testified the plaintiff was subject and included Mr. Lyons' age, education, and work experience as of December 31, 1978. The vocational expert opined that there were significant jobs in the national economy that Mr. Lyons could have performed.

On September 26, 1997, the ALJ issued a decision denying the application for benefits. The Appeals Council denied review. The plaintiff again sought judicial review. In an order issued on January 18, 2000, the district court granted summary judgment to the Commissioner. This appeal followed.

## II

We must sustain the Commissioner's conclusions absent a determination that the Commissioner failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record as a whole. See 42 U.S.C. § 405(g); see also *Preslar v. Secretary of Health and Human Services*, 14 F.3d 1107, 1110 (6th Cir.1994), and *Tyra v. Secretary of Health and Human Services*, 896 F.2d 1024, 1028 (6th Cir.1990). This court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). And an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. See *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir.1996).

Under the Social Security Act, an individual is entitled to disability insurance benefits if he (1) is insured for such benefits, (2) has not attained retirement age, (3) has filed an application for the benefits, and (4) is under a disability. See *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir.1997). Section 423(d)(1)(A) of Title 42 defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." Furthermore,

"[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2).

---

**4.** It is worth noting that during his examination, Dr. Weiss conducted cardiac testing that revealed regular rate and rhythm. Dr. Weiss also concluded that the ulcer disease was not disabling.

The alleged onset date of Mr. Lyons' disability was February 24, 1974. The claimant's insured status expired on December 31, 1978. For Mr. Lyons to prevail on his claim that he was disabled as a result of heart, respiratory, or gastrointestinal ailments, the disability thus had to commence prior to December 31, 1978, and must have continued unabated for at least 12 months prior to that date.

■ As to Mr. Lyons' heart disease, there is no evidence that the condition was disabling prior to the expiration of insured status. Mr. Lyons did not undergo bypass surgery until 1991, at which time he told his treating physician, Dr. Whayne, that he had only an eight-year history of heart problems. The cardiac testing conducted by Dr. Weiss in 1976, moreover, revealed regular rate and rhythm and offered no evidence of congestive heart failure.

■ As to the plaintiff's gastrointestinal illness, the record reveals that on May 31, 1974, three months after the alleged onset date of his disability, Mr. Lyons had surgery to repair his duodenal and gastric ulcers. Follow-up surgery had to be performed on June 10, 1974. On June 18, 1974, the plaintiff was released from the hospital. By July of 1974 he was described by Dr. Molea as much improved and continuing to improve. By September 3, 1974, Mr. Lyons' only complaint was that he vomited if he ate too much. There is thus substantial evidence that within six months of the alleged onset date, Mr. Lyons' duodenal and gastric ulcer problem was resolved.

The plaintiff also includes his incisional hernia as part of his greater gastrointestinal difficulties. The first mention of Mr.

Lyons' hernia occurs in Dr. Molea's notes on November 27, 1974. There is no discussion of how severe the hernia was at this point or what effect it may have had. What is clear is that Dr. Molea waited until April of 1975—five months—to repair the hernia. The plaintiff was kept in the hospital for five days and then released. By May 7, 1975, in a report filed with the State of Ohio Bureau of Disability Determination, Dr. Molea described the plaintiff's hernia as well-healed with no problems. The report also describes Mr. Lyons' stomach function as normal.[5]

In sum, the plaintiff's claims of heart disease and gastrointestinal problems do not rise to the level of disabilities within the meaning of the Social Security Act. Mr. Lyons' heart problems did not commence until after the end of his insured status and his gastrointestinal problems did not last continuously for the required 12–month period.

The plaintiff's final claim of disability is based on his respiratory difficulties. In this connection we note that an ALJ is required to follow a five-step sequential analysis set out in agency regulations. This court has summarized the steps as follows:

"1. If claimant is doing substantial gainful activity, he is not disabled.

"2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

"3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period

5. In addition, it would seem that the plaintiff's disability claim based on his gastrointestinal problems is barred by *res judicata*. See *Cottrell v. Sullivan*, 987 F.2d 342, 344 (6th Cir.1992). The claim was fully litigated and denied as part of Mr. Lyons' first application for benefits. So far as the record reveals, no new Social Security guidelines were instituted for gastrointestinal problems.

of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

"4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

"5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled." *Walters v. Commissioner of Social Security,* 127 F.3d 525, 529 (6th Cir.1997); 20 C.F.R. § 404.1520.

There is no dispute that Mr. Lyons has not worked since 1974 (step 1), that his pulmonary disease was severe (step 2), that his impairments prior to December 31, 1978, did not meet or equal a listed impairment (step 3), and that he could not return to his job at General Motors (step 4). The question is thus whether Mr. Lyons' "residual functional capacity" was such that he could not perform work that existed in the national economy (step 5). The ALJ found that while Mr. Lyons did suffer from a moderately serious lung disease, he maintained the residual capacity to perform light work available in the national economy.

▇ The basic thrust of the plaintiff's attack on this finding is that the ALJ improperly relied on the opinion of a non-treating physician, Dr. Marshall, instead of those of the treating physicians. In this connection Mr. Lyons points to: (1) health insurance claim forms submitted by Drs. Molea and F.K. Belhasen opining that Mr. Lyons was permanently disabled as a result of his respiratory problems; (2) test results obtained by Dr. Posevitz in 1974 detailing the severity of his lung disease; (3) reports prepared by Dr. Posevitz in 1993 and 1997 describing restrictions pur-

portedly instituted in 1974 on the plaintiff's activities, including the avoidance of: irritants, exposure to extreme temperatures, stress, anxiety-producing situations, elevation of arms, arm movement, bending, crawling, stopping, working at heights, sitting or standing for more than one-half hour, and lifting more than 5 pounds; and (4) a disability determination from General Motors in February 1974.

On the record as a whole, none of this is dispositive; the ALJ's conclusion of residual capacity is supported by substantial contradictory evidence. Following his September 8, 1976, examination, Dr. Weiss concluded that the plaintiff had the functional capacity to sit for a total of eight hours in an eight hour work day, stand and walk for up to four hours in an eight hour work day, frequently lift and carry up to ten pounds, occasionally lift and carry up to 100 pounds, perform repetitive actions with his hands and feet, reach above shoulder level, and work without environmental restrictions. Dr. Marshall credited this analysis, and, based on the entirety of the medical evidence, he described specific functional restrictions he thought were applicable to the plaintiff. In responding to a hypothetical question consistent with these restrictions, Dr. Owen, the vocational expert, identified a significant number of jobs that Mr. Lyons could have performed as of December 31, 1978.

▇ The contrary evidence from the plaintiff's treating physicians is not controlling. First, as to the health insurance forms in which Drs. Molea and Belhasen spoke of permanent and total disability, the court has previously held that the determination of disability for Social Security purposes is the prerogative of the Commissioner alone. See *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985). The Commissioner is not bound by treating physicians' opinions of disability in the face

of substantial evidence to the contrary, such as that offered by Dr. Weiss. See *Hardaway v. Secretary of Health and Human Services,* 823 F.2d 922, 927 (6th Cir. 1987).

█ Second, the 1974 test results obtained by Dr. Posevitz were discounted by Dr. Marshall because they did not appear satisfactory under Social Security guidelines. A non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians. See *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994.)

Third, Dr. Posevitz's 1993 and 1997 reports, detailing extreme restrictions on the plaintiff's mobility in 1974, are inconsistent with Dr. Posevitz's contemporaneous report from 1974. Other than a recommendation to quit smoking, that report contains no limitations on the plaintiff's activities.

█ Lastly, as to the allegation that Mr. Lyons had been placed on disability retirement by General Motors, there is no documentation of this in the record. In any event, General Motors' opinion of the plaintiff's condition is not determinative. The Commissioner is not required to take into account the determinations of other federal agencies, see 20 C.F.R. § 404.1504, *Harris,* 756 F.2d at 434, much less those of a private employer.

The plaintiff also repeatedly categorizes the ALJ's conclusion as "suspect" in light of *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir.1997) and the ensuing Social Security Acquiescence Ruling 98–4(6). In *Drummond,* the claimant filed an initial application for benefits covering the period from July 6, 1987, to July 28, 1988. The application was denied because the claimant had the residual ca-pacity to perform "sedentary" work. At the time she was 49 years old and was classified under Social Security regulations as a "younger" worker. A subsequent application, covering the period from July 28, 1988, to August 2, 1990, was denied because the ALJ concluded that she had the residual capacity to perform medium level work. During the period covered by the latter application, however, Ms. Drummond was between 50 and 54 years old and was thus considered under Social Security regulations to be a "person approaching advanced age." If Ms. Drummond had been determined to have a residual capacity limited to sedentary work, as was decided in the first determination, she would have been entitled to disability benefits under the Commissioner's regulations for the later time period because of the combination of her age classification and residual capacity. Upon review, the court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842. Accordingly, the second ALJ should have found that Ms. Drummond retained the residual capacity for sedentary work only. *Id.* at 843.

*Drummond* is simply inapposite here. In the most recent hearing in Mr. Lyons' case, the ALJ concluded that the plaintiff had the residual capacity to perform light work. The ALJ who presided over the hearing on the claimant's first application reached an identical result. *Drummond* therefore has no bearing on this case.

The judgment of the district court is AFFIRMED.