**Frank EVANS, Plaintiff-Appellant,**

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

**No. 86–1429.**

United States Court of Appeals, Sixth Circuit.

Decided April 6, 1987.

Kevin P. Kales, Miller, Cohen, Martens & Ice, P.C., Detroit, Mich., for plaintiff-appellant.

Geneva Halliday, Asst. U.S. Atty., Detroit, Mich., Robert E. Hanson, HHS Office of General Counsel, Region V, Chicago, Ill., for defendant-appellee.

Before MARTIN and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

PER CURIAM.

Frank Evans appeals from the judgment of the district court dismissing his action brought pursuant to 42 U.S.C. § 405(g) and upholding the Secretary's determination that Evans is not disabled and is therefore not entitled to disability benefits. Evans argues that the medical evidence establishes an impairment which meets or equals an impairment listed in Appendix 1, 20 C.F.R. § 404, Subpt. P.

### I.

Evans filed his application for disability benefits on January 19, 1984 alleging an onset date of September 28, 1983. Evans'

application was denied both initially and upon reconsideration. Evans then requested a hearing before an administrative law judge (ALJ), which was held on September 26, 1984.

At the hearing, Evans testified that he was born on January 17, 1937 and had completed the tenth grade in school. He also stated that he had 20 years of experience working as hi-lo driver for General Motors, where he last worked in September of 1983. When asked if he could do a job which involved lifting ten pounds frequently and twenty pounds occasionally and which required him to sit, stand and walk, he replied that he would be willing to give it a try. Evans also testified that the only medication he takes is sleeping pills, which he takes "sometimes three or four times a week."

The following medical evidence was adduced at the hearing. In June of 1981, Evans was admitted to Sinai Hospital of Detroit for surgery due to cirrhosis of his liver. Evans had an unremarkable course of recovery and was discharged on July 1, 1981.

In September of 1983, Evans underwent a chest x-ray for a follow-up on his surgery, and a lung mass was discovered in the left upper lobe of his lung. Evans was again admitted to Sinai Hospital for evaluation and possible surgery. Dr. A. Bayar found that the tumor mass was obviously malignant and performed a lobectomy on September 30, 1983, in which he excised the malignant tumor.

On October 4, 1983, Dr. Robert Bota issued a pathology report on the tumor. Dr. Bota reported that the "tumor extends to the pleural surface where there are some areas of penetration." Dr. Bota also noted that the lymph nodes showed no evidence of tumor metastasis, and that there were no areas of additional malignancy. Dr. Bota's diagnosis was "poorly differenti-

ated adenocarcinoma of lung" and "infiltration through pleura." [1]

Evans was seen on a follow-up basis at Sinai Hospital on October 18, 1983 and his examination was unremarkable. Evans received radiation treatments at this hospital from October 25, 1983 through December 1, 1983, which he tolerated very well. Evans was next seen at the hospital on January 12, 1984, at which time a chest x-ray was taken. No apparent recurrent neoplasm [2] was identified from that x-ray.

Evans was subsequently examined on January 24, 1984 by Dr. V. Barias. Dr. Barias concluded that Evans should be considered totally and permanently disabled due to his recent history of carcinoma of the lung with possible regional metastasis and distant metastasis.

Evans' treating physician throughout this time was Dr. Adrian Go. Dr. Go prepared several reports for Evans' private disability insurance claim, in which he initially estimated that Evans could resume his previous work in late 1983. In subsequent reports, however, Dr. Go predicted that Evans would not return to work until early 1984. Finally, in a report dated May 11, 1984, Dr. Go concluded that Evans would not be returning to his past work of medium exertion.

On January 31, 1984, Dr. Bayar, who performed Evans' surgery, prepared a report based on Dr. Bota's pathology report. In it, Dr. Bayar concluded that there was no evidence of metastases or of any recurrence. Dr. Go also prepared a report on January 31, in which he likewise concluded that there was no known evidence of metastases or recurrence of Evans' carcinoma. Dr. Go issued another report on April 14, 1984 in which he again concluded after examining Evans that there was no evidence of any metastases, recurrence, or residual tumor.

---

1. The pleura is a moist membrane which invests the lungs and lines the chest wall, completely closing a potential cavity known as the pleural cavity in which lung movements are facilitated within the chest wall by the pleura's moisture. *Dorland's Medical Dictionary* 1174 (24th ed. 1965).

2. A neoplasm is any "new and abnormal growth, such as a tumor." *Dorland's Illustrated Medical Dictionary* 987 (24th ed. 1965).

Dr. Irene Macko examined Evans on February 14, 1984. Dr. Macko noted that Evans complained that his problem of shortness of breath had worsened since his lung surgery. However, pulmonary function studies performed by Dr. Macko revealed normal values.

On March 6, 1984, Dr. M.C. Henry, Jr., reviewed Evans' medical record and concluded that he retained the capacity for work of medium exertion. On April 26, Dr. T. Johnson also reviewed Evans' medical record and likewise concluded that Evans could still perform a full range of medium work.

The ALJ rendered his decision on November 26, 1984, finding that Evans was not entitled to disability benefits. The ALJ first determined that Evans suffered from "severe" impairments as demonstrated by the medical evidence. The ALJ further found, however, that Evans' impairments did not equal any of those listed in Appendix 1, 20 C.F.R. § 404, Subpt. P. Specifically, the ALJ found no "evidence of recurrence o[r] metastasis of carcinoma." The ALJ believed that it was a close question whether Evans could do his past relevant work, but allowing for a generous interpretation of the evidence, the ALJ concluded that Evans could not return to his past work as a hi-lo driver. Therefore, the ALJ applied the medical-vocational guidelines and, assuming that Evans had the residual capacity to perform a full range of sedentary work, found that Rule 201.09 directed a finding of not disabled. 20 C.F.R. § 404, Subpt. P, Appendix 2, Rule 201.09. The ALJ also received testimony of a vocational expert and found, based on that testimony, that Evans could perform available unskilled sedentary jobs which existed in the local economy.

Evans requested review of the ALJ's decision by the Appeals Council, but on April 30, 1985, the Appeals Council found no basis for review. Thus, the ALJ's decision became the final decision of the Secretary.

Evans then filed the present action for judicial review with the district court pursuant to 42 U.S.C. § 405(g). Evans' case was referred to a magistrate. Upon consideration of the parties' cross-motions for summary judgment, the magistrate issued a Report and Recommendation on December 30, 1985, recommending dismissal of Evans' action. The magistrate stated:

That Plaintiff was diagnosed as having had lung cancer is well settled. However, Plaintiff submitted to an operation in 1983, and there is no evidence of record that the cancer is still present or has reoccurred since the operation up to and including the present. Up to now, the only physical limitations relating to Plaintiff's post-operative condition is a slight limitation on the use of ... his left upper extremeties because of residual soreness at the surgical site, which does not preclude sedentary work.

Evans filed timely objections to the magistrate's Report and Recommendation in which he alleged that he suffered from a lung cancer condition which met or equalled that described in Listed Impairment 13.14, 20 C.F.R. § 404, Subpt. P, Appendix 1, which covers "[m]alignant tumors, metastatic to pleura."

On March 26, 1986, the district court adopted the magistrate's Report and Recommendation, concluding that the ALJ's findings were based on substantial evidence. The court specifically found that Evans' impairment did not meet Listed Impairment 13.14, since Dr. Bota's pathology report indicated that there was no metastasis to the pleura.

Evans then filed a motion for reconsideration which the district court denied on April 25, 1986. The court noted that

[t]he sources cited by plaintiff make it clear that a metastic [sic] spread is one which is "not directly connected" to the primary tumor, and that "The usual application ... is to the manifestation of a malignancy as a secondary growth arising from the primary growth in a new location. Spread is by the lymphatics or blood stream." Taber's Cyclopedic Medical Dictionary, "Metastasis." The Court notes that plaintiff has presented no evidence which suggests that the involvement of the pleura was the result of such a secondary growth, rather than the kind

of local invasion of the pleura referred to in the pages attached by plaintiff to his Memorandum from Treatment of Cancer of the Lung, *Textbook of Surgery*, 10th Ed., David C. Sabiston, Jr., M.D., ed. The determination by the Magistrate that it was not a secondary growth, however, is supported by substantial evidence in the record. Thus, the Court's earlier determination was in accord with the facts as developed in the record

. . . .

After the court denied Evans' request for reconsideration, he brought this timely appeal.

## II.

This case presents one issue—whether the medical evidence establishes that Evans' lung cancer meets or equals the requirements of Listed Impairment 13.14(B), thereby rendering him disabled and qualifying him for disability benefits. The ALJ specifically found that Evans did not have an impairment equal to one listed in Appendix 1, 20 C.F.R. § 404, Subpt. P. This finding was adopted by the Secretary when the Appeals Council declined to review the ALJ's decision. Pursuant to 42 U.S.C. § 405(g), such a finding is conclusive if supported by substantial evidence. Thus, our review is limited to determining whether there is substantial evidence in the record to support the finding of the ALJ. " 'Substantial evidence' means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In determining this question, we must examine the evidence in the record "taken as a whole." *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980).

As acknowledged above, the analysis of this case focuses on the "Listing of Impairments," 20 C.F.R. § 404, Subpt. P, Appendix 1. "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.-1525. Furthermore, most of the impairments listed in Appendix 1 "are permanent or expected to result in death, where a specific statement of duration is made. For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* Thus, in order to be considered disabled under the Listing of Impairments, a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments. Where a claimant successfully carries this burden, the Secretary will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

The listed impairment upon which Evans relies is found within the general section entitled Neoplastic Diseases—Malignant, 20 C.F.R. § 404, Subpt. P, Appendix 1, § 13.00. The introduction to that section explains that the "determination of the level of severity resulting from malignant tumors is made from a consideration of the site of the lesion, the histogenesis of the tumor, the extent of involvement, the apparent adequacy and response to therapy (surgery, irradiation, hormones, chemotherapy, etc.), and the magnitude of the post-therapeutic residuals." § 13.00(A). Evans claims that his impairment can be evaluated under the listing for neoplastic diseases of the pleura, which in pertinent part directs a finding of disability for persons with "[m]alignant tumors, metastatic to pleura." § 13.14(B).

The medical evidence clearly establishes that Evans suffered from a malignant tumor which was excised in September of 1983. Thus, the first element of § 13.14(B) is met. The disputed issue, however, is whether the second element is met; that is, whether the tumor metastized to the pleura. Evans claims that it did and for support relies on Dr. Bota's pathology report in which he stated that Evans' primary

tumor had extended "to the pleural surface where there [were] some areas of penetration." Evans equates Dr. Bota's finding with the medical definition of metastasis.

We disagree with this view. Metastasis, simply put, is the "transfer of disease from one organ or part to another not directly connected with it ... [by] transfer of cells, as in malignant tumors." *Dorland's Medical Dictionary* 909 (24th ed. 1965). *Dorland's* further describes metastases as a growth of abnormal cells "distant from the site primarily involved by the morbid process." In dismissing Evans' action, the district court below relied on a similar definition found in *Taber's Cyclopedic Medical Dictionary* 1040 (15th ed. 1985), which instructs that metastatic spread is one "not directly connected" to the primary malignant tumor, and is usually applied "to the manifestation of a malignancy as a second growth arising from the primary growth in a new location. Spread is by the lymphatics or blood stream." *Id.*

When analyzed under these definitions, substantial medical evidence of record supports the finding that there was no metastasis of Evans' malignant primary tumor. The operating physician stated in his report dated January 31, 1984, that there was no evidence of metastases. Evans' treating physician, Dr. Go, likewise reported on two separate occasions that he found no evidence of metastases. Dr. Bota's pathology report is not inconsistent with these findings. In examining the regional lymph nodes, through which metastatic spread often occurs, Dr. Bota found no evidence of tumor metastasis. What Dr. Bota did find is that Evans' primary tumor had penetrated some areas of the pleura. The tumor was excised, however, and, as we have noted, the physicians who subsequently examined Evans found there was no metastasis or recurrence of the carcinoma. Under these circumstances, we decline to equate Dr. Bota's statement that the primary tumor infiltrated the pleura with a finding of

metastasis. Accordingly, we conclude that substantial evidence in the record supports the finding that Evans' condition does not meet or equal an impairment found in the Listing of Impairments.[3]

Although Evans does not challenge the remainder of the ALJ's findings, including the conclusion that Evans is not disabled due to his capacity to perform a full range of sedentary work, we have reviewed those findings and conclude that they are supported by substantial evidence. Accordingly, we AFFIRM the judgment of the district court dismissing Evans' action for review.

---

**3.** This conclusion not only rejects Evans' reliance on § 13.14(B), but also embodies a determination that Evans' impairment does not meet or equal the conditions of § 13.13, which directs a finding of disability when there is neoplastic disease of the lungs "[w]ith metastases" or "[r]ecurrent after resection."