**Eddie RIDGE, Plaintiff,**

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

**No. 1:01 CV 1659.**

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 10, 2002.

Eva I. Guerra, West Bloomfiels, MI, for Plaintiff.

Michael A. Johnson, Office of the United States Attorney, Northern District of Ohio, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION

NUGENT, District Judge.

Plaintiff filed this action seeking review of the decision of the Administrative Law

Judge ("ALJ") denying his claim for disability insurance benefits. The matter is now before the Court upon the Report and Recommendation of Magistrate Judge George J. Limbert (ECF Docket # 20). The Magistrate Judge recommends that the Court find that substantial evidence exists to support the ALJ's determination that Plaintiff's impairments do not meet Listing 1.09(C). However, the Magistrate Judge recommends that the Court remand this action to the ALJ to reconsider whether Plaintiff's combination of impairments medically equal Listing 1.09(C), to fully explain and analyze, preferably with the aid of a medical expert, Plaintiff's allegations of disabling pain in accordance with federal regulation and rules, and to determine or further explain his finding that Plaintiff could performing the full range of sedentary work considering all of Plaintiff's impairments. The Magistrate Judge further recommends that the ALJ review the evidence and determine in consultation with a vocational expert whether work exists in significant numbers in the national economy for a person with Plaintiff's impairments. No objections to the Report and Recommendation were filed.

## Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case de novo. FED. R. CIV. P. 72(b) states:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

The text of Rule 72(b) does not indicate the appropriate standard of review for reports to which no objections have been made. The Advisory Committee on Civil Rules commented on district court review of unopposed reports. In regard to subsection (b) of Rule 72, the advisory committee stated: "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72 advisory committee's notes (citation omitted).

The standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding benefits. Judicial review of the Commissioner's decision, as reflected in the decision of the ALJ, is limited to whether the decision is supported by substantial evidence. *See Smith v. Secretary of Health and Human Servs.,* 893 F.2d 106, 108 (6th Cir.1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Secretary of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir.1993) (citation omitted).

## Decision

This Court has reviewed the Magistrate Judge's Report and Recommendation and has considered all of the pleadings, transcripts, affidavits, motions, and filings of the parties in this matter. After careful evaluation of the record, the Court adopts the findings and conclusions of the Magistrate Judge as its own. The Court finds the Report and Recommendation to be

thorough and well-reasoned and agrees with the findings and conclusions of the Magistrate Judge.

Accordingly, the Report and Recommendation of Magistrate Judge Limbert (ECF Docket # 20) is hereby ADOPTED by the Court. This matter is hereby remanded to the ALJ for proceedings consistent with Magistrate Judge Limbert's report and recommendation.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

LIMBERT, United States Magistrate Judge.

Plaintiff Eddie Ridge (Plaintiff) filed this action against Defendant Kenneth S. Apfel, the Commissioner of the Social Security Administration [1] (Defendant) on July 9, 2001. See ECF Dkt. # 1. Plaintiff seeks judicial review of the Administrative Law Judge's decision pursuant to § 205(g) of the Social Security Act, as amended in 42 U.S.C. § 405(g), denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). See 42 U.S.C. §§ 401–433. Plaintiff asserts that the Administrative Law Judge (ALJ) committed numerous errors in his February 17, 1999 decision denying his application under Title II of the Act for DIB, 42 U.S.C. §§ 401–433. See ECF Dkt. 1, 18.

Plaintiff asserts four assignments of error in his brief. See ECF Dkt. # 18 at iv-v. First, Plaintiff maintains that the ALJ erred in concluding that Plaintiff's medical problems, either alone or in combination, did not medically meet or equal a listed impairment. See id. at 10. Second, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility, especially regarding the severity of Plaintiff's symptoms and

limitations. See id. at 15. Third and fourth, Plaintiff avers that the ALJ erred in determining Plaintiff's Residual Functional Capacity (RFC), and concluding that Plaintiff could perform a full range of sedentary work. See id. at 17, 20. For the following reasons, the Court recommends that the instant case be REMANDED for further explanation, fact-finding, and testimony. See ECF Dkt. # 1.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 13, 1997, under the Act. See Transcript ("Tr.") at 87–88, and 42 U.S.C. §§ 416(i), 423(d). Plaintiff alleged disability from March 20, 1997 due to impingement syndrome of the right achilles tendon, loss of medial arch with drop foot, plantar fascial strain of the left foot, pain in his right knee, hip, neck, and back, and right wrist fusion. See id. at 35, 39, 87, 100, 121. Plaintiff's applications were denied initially and on reconsideration. See id. at 70–75, 77–79.

On February 17, 1999, after a hearing, an ALJ found that Plaintiff was not disabled because he retained the RFC to perform a full range of sedentary exertion work. See Tr. at 10–18. Shortly after the ALJ's decision, the Appeals Council denied Plaintiff's request for review. See id. at 4–5. Plaintiff filed a complaint with this Court on July 9, 2001, which seeks judicial review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). See ECF Dkt. # 1. The Commissioner filed an answer on October 5, 2001, wherein she averred that the findings of the then Commissioner of Social Security were supported by substantial evidence, and thus are conclusive. See ECF Dkt. # 12.

---

1. On November 14, 2001, Jo Anne B. Barnhart was sworn in as the new Commissioner of the Social Security Administration. Under

Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g), Jo Anne B. Barnhart is automatically substituted as the Defendant in this action.

Subsequent to the hearing, on August 19, 1998, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on March 20, 1997, the date the claimant stated he became unable to work, and has acquired sufficient quarters of coverage to remain insured through at least December 31, 2001.

2. The claimant has not engaged in substantial gainful activity since March 20, 1997.

3. The medical evidence establishes the claimant has a history of right foot drop with medical arch collapse and a foot deformity, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's statements concerning his impairments and their impact on his ability to work are supported by the medical findings only to the extent he is limited to performing sedentary work.

5. The claimant lacks the residual functional capacity to lift more than ten pounds occasionally or to stand or walk for prolonged periods.

6. The claimant is unable to perform his past relevant work as an automobile assembly worker.

7. The claimant has no significant nonexertional limitations which narrow the full range of sedentary work which he is capable of performing.

8. On March 20, 1997, the claimant was 39 years old, a "younger individual."

9. The claimant has a high school education.

10. Based on an exertional capacity for sedentary work and the claimant's age, educational background and work experience, 20 C.F.R. § 404.1569 in conjunction with Rule 201.27, Table 1, Appendix 2, Subpart P, Regulations No. 4, direct a conclusion of "not disabled." The same result would be reached without regard to the skill level of Mr. Ridge's former work or to the issue of any transferability of work skills.

11. The claimant has not been under a disability, as defined in the Social Security Act, as amended, at any time through the date of this decision.

*Id.* at 17–18. On November 4, 1998, Plaintiff filed a timely request for review of the ALJ's decision with the Appeals Council of the Social Security Administration. *See id.* at 10. On October 5, 1999, the Appeals Council, having considered the brief and additional evidence submitted by Plaintiff, denied his request for review. *See id.* at 6–7. In turn, the ALJ's decision became the final decision of Defendant. Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. SUMMARY OF MEDICAL EVIDENCE

Plaintiff relies on a litany of maladies to buttress his claim for DIB benefits. *See* ECF Dkt. # 1, 18. Plaintiff began to work at the Ford Motor Company (Ford) in 1977 as an assembly line worker. *See* ECF Dkt. # 18 at 2, *and* Tr. at 30. Plaintiff worked at Ford for twenty years until March, 1997. *See id.* Plaintiff avers that he discontinued working because of continuing medical problems involving, *inter alia,* total hip replacement, spondylolisthesis of the back, wrist fusion, knee fracture, drop foot, and resultant severe pain, and inability to walk or sit for extended periods of time. *See* ECF Dkt. # 18 at 2.

In 1977, the same year he began to work for Ford, Plaintiff was involved in an auto-

mobile accident in which he sustained a compound fracture of the patella, lacerations of the quadriceps tendon, ruptured cruciate ligaments, a fractured pelvis, a fractured right acetabulum, a dislocation of the right hip, and sciatic nerve palsy. *See* ECF Dkt. # 18 at 2. During Plaintiff's approximate two month stay in a hospital following his car accident, doctors apparently repaired the quadriceps tendon of his right knee and his right hip and excised dead and damaged tissue. *See id.* at 3. In November 1977, Dr. Donald Blanford, M.D., stated that Plaintiff's ability to work was quite limited. *See* Tr. at 142. In July 1978, Dr. Blanford noted that Plaintiff would need restrictions against excessive and prolonged walking. *See id.*

Plaintiff sought medical attention in 1979 due to problems with his right foot and hips *See* Tr. at 143. An x-ray revealed posttraumatic arthritis and marginal spurring of Plaintiff's right femoral, or thigh bone, head. *See id.* In May, 1980, Dr. Blanford noted that Plaintiff was experiencing right heel pain and that he was beginning to limp. *See id.* X-rays at that time revealed evidence of a degenerative process involving the acetabular area as well as the head of the femur, and Dr. Blanford opined that Plaintiff suffered from degenerative arthritis of the right hip. *See id.* At age 27, Plaintiff was told that a hip replacement would be inevitable, and at age 29, Plaintiff had the hip replacement surgery in January, 1987. *See id.* at 145, 149.

Prior to having hip replacement surgery in 1987, Plaintiff complained of foot pain and soreness in his knees. *See* Tr. at 146. In November, 1985, Plaintiff fell in the parking lot at Ford and landed on his knees and aggravated his hip condition. *See id.* at 146–147. In 1986, Plaintiff told Dr. Blanford that his wrists and shoulders were bothering him, particularly his right wrist and left shoulder. *See id.* Plaintiff stated that his right hand tended to go to sleep and that his shoulders especially bothered him when he abducted. *See id.* In his examination notes, Dr. Blanford documented that Plaintiff underwent surgery on his right wrist on two occasions in 1974 for a fracture of the navicular, boat shaped bones within the wrist. *See id.*

X-rays of Plaintiff's right wrist taken in 1986 revealed an existing remote fracture of the navicular. *See* Tr. at 147. Dr. Blanford opined that it appeared that the navicular had developed avascular necrosis, *i.e.* poor blood flow or locking of blood vessels coupled with existing dead areas of tissue and bone. *See id.* Dr. Blanford also noted that Plaintiff was experiencing collapse or sudden weakness and prostration due to decreased circulation of blood in his right wrist, and that there was a bony outgrowth formation, along with narrowing of all the joints around the navicular. *See id.* Plaintiff received two injections in his right wrist in 1986 and was off work for some time. *See id.* at 148. Dr. Blanford's opined that Plaintiff had right carpal tunnel syndrome, severe carpal arthritis and tendinitis of the left shoulder; he also characterized Plaintiff's right wrist condition as chronic. *See id.*

In May, 1986, Dr. Blanford noted that Plaintiff was having pain in his back from limping with his hip, and that the pain was becoming increasingly severe. *See* Tr. at 148. On January 12, 1987, Plaintiff underwent right total hip replacement arthroplasty. *See id.* at 149. The admission notes state that Plaintiff suffered from shortening of his limb, and that the fractured navicular in his right wrist caused severe post-traumatic arthritis of the wrist. *See id.* at 180. The final impression at the time of Plaintiff's admission for hip replacement included severe post-traumatic arthritis of the right hip, right incomplete sciatic nerve palsy with foot

drop, post-traumatic arthritis of the right wrist and anemia secondary to operative blood loss. *See id.*

Subsequent to his hip replacement, Dr. Blanford prescribed Plaintiff a cane and shoe-lift. *See* Tr. at 149. Upon Plaintiff's return to work, Dr. Blanford suggested various restrictions including no stopping, squatting, excessive walking, or bending more than 90 degrees from the waist. *See id.* at 151. According to Plaintiff, because of a great deal of standing and walking at work, he suffered a strain of his right hip which caused him to be off work again until his pain subsided. *See* ECF Dkt. # 18 at 5.

In July, 1990, Dr. Blanford stated that Plaintiff sought medical attention because he was experiencing numbness and tingling in the fingers of his right hand. *See* Tr. at 153. Dr. Blanford noted Plaintiff's history regarding his right wrist, including the fracture he suffered in high school, which resulted in a cast being on his hand for approximately one year, followed by the two previously mentioned surgeries. *See id.* While noting that Plaintiff had limited motion in his wrist accompanied with carpel tunnel symptoms, Dr. Blanford opined that healing never fully occurred with Plaintiff's wrist. *See id.* at 153. Dr. Blanford limited Plaintiff from using power tools or from performing heavy lifting with his hand, and because of continuing hip pain, Plaintiff was taken off of work once again. *See id.* at 154. Plaintiff indicated to Dr. Blanford that he wished to go back to work. *See id.*

In May, 1991, Plaintiff again sought medical attention for problems with his right wrist, including pain, and numbness and tingling in his right hand and on the tips of his fingers. *See* Tr. at 154. X-rays at that time again revealed severe post-traumatic arthritis which was "quite sclerotic" or hardened. *See id.* Dr. Blanford's impression was carpal tunnel syndrome

secondary to post-traumatic arthritis of the wrist and he administered an injection to Plaintiff's wrist. *See id.*

After returning to work, Plaintiff fell at work in December, 1991. *See* Tr. at 156. X-rays at that time revealed a longitudinal fracture in the patella in his right knee. *See id.* Dr. Blanford noted that Plaintiff had hemarthrosis or bloody effusion into the cavity of a joint. *See id.* A knee immobilizer was prescribed and Plaintiff was once again advised to stay off of work. *See id.*

After returning to work Plaintiff continued to have problems with his hand as noted by Dr. Blanford in July, 1992. *See* Tr. at 157. Plaintiff averred that he had no feeling in his middle finger for six months, followed by a burning sensation and overall weakness in his hand. *See id.* X-rays again revealed marked degenerative changes in all the joints above the navicular, which was sclerotic and showed evidence of the old fracture. *See id.* Dr. Blanford opined that Plaintiff required carpal tunnel decompression. *See id.* Plaintiff reported that his father and uncle had suffered from arthritis which caused their fingers some deformity. *See id.*

In spite of the hip replacement, Plaintiff continued to experience pain in his right hip as noted in Dr. Blanford's records in June, 1993. *See* Tr. at 158. X-rays of Plaintiff's right hip at that time revealed lost bone tissue in the trochanteric area, *i.e.* the bony processes below the neck of the femur that was likely due to stress shielding. *See id.* By June, 1994, Dr. Blanford opined that the discomfort Plaintiff was experiencing was most likely from his spine. *See id.* at 160. Dr. Blanford labeled Plaintiff's back problem as chronic and diagnosed Plaintiff with severe spondylolisthesis with secondary degenerative changes. *See id.* Plaintiff was unwilling

to consider a surgical option, including a fusion, for his back condition. *See id.*

In September, 1994, Plaintiff had to once again leave work because of continuing pain and swelling in his wrist. *See* Tr. at 161. On exam there was swelling and bony prominence with marked restriction of the wrist motion. *See id.* X-rays of the wrist at that time revealed marked arthritic change with collapse of the carpal bones. *See id.* In October, 1994, Dr. Blanford's notes indicated that the "only lasting treatment at this point is a wrist fusion. It would leave him with permanent loss of the little wrist motion that he has." *Id.* at 163. Dr. Blanford further documented that Plaintiff was reluctant to undergo surgery, and thus for the time being a molded wrist splint was recommended. *See id.*

In June, 1995, Plaintiff was again off work due to pain and numbness in his right hip and right leg. *See* Tr. at 164, 165. A few months later, Plaintiff received an injection in his right hip. *See id.* In July, 1996, Plaintiff began treatment with Dr. John Cann, a podiatrist, for his right foot drop secondary to deep peroneal nerve injury. *See id.* at 168. Dr. Cann noted that in a weight bearing stance Plaintiff had a valgus deformity of the foot with medial arch collapse. *See id.* Dr. Cann referred Plaintiff for an articulated AFO. *See id.*

In March, 1997, Dr. Blanford documented that Plaintiff underwent a wrist fusion. *See* Tr. at 169. During the hearing, Plaintiff testified that after the wrist fusion surgery he could effectively no longer bend his wrist. *See infra, and* Tr. at 169. In terms of his feet, Plaintiff was diagnosed by Drs. Kolczun and Kolczun as having impingement syndrome in the lateral aspect of the right foot, subtalar joint, medical arch collapse with foot drop, and plantar fascial strain of the left foot. *See id.* at 127. Plaintiff was administered an injection into his left foot, which appeared to have had less than one day of relief. *See id.* Plaintiff was unable to work at this time and the doctors were attempting to fit Plaintiff with an appropriate AFO, and also discussed the possibility of a future tendon transfer in the foot. *See id.*

Plaintiff continued to experience pain in his right knee, which Dr. Kolczun opined to be the result of a strain of the medial side of the knee because of altered gait mechanics. *See* Tr. at 126. Records from Drs. Kolczun and Kolczun dated December, 1997, document that Plaintiff was having problems falling frequently because of medical arch collapse, and had apparently fallen and injured his right elbow as a result of his foot condition. *See id.* at 139.

## III. TESTIMONIAL EVIDENCE

Plaintiff stated that he had been born on June 25, 1957, and thus was 39 years old at the time of the hearing before the ALJ. *See* Tr. at 30. Plaintiff, a 5 foot 11 inch, 190 pound male has never been married and attended school through the twelfth grade. *See id.* At graduating from high school, Plaintiff worked at Ford Motor Company (Ford) for twenty years from 1977 to 1997 as an assembly line worker. *See id.* Plaintiff testified that at the time he left Ford in March 1997 he began receiving an $1,800 a month medical disability retirement payment from Ford. *See id.* at 33. Plaintiff also averred during the hearing that he was disabled due to arch collapse, hip replacement, and knee and back problems. *See id.* at 35.

Plaintiff explained to the ALJ that since his hip replacement surgery in 1987, he periodically would take off time from work for a few months at a time to rest his hip. *See* Tr. at 35. The ALJ asked Plaintiff why he did not find less taxing work, and Plaintiff responded that he did not want to leave Ford because of his 10 year plus tenure, emotional comfort level for this

job, and his lack of transferable job skills. *See id.* Plaintiff explained that he has had numerous health problems which have led to wrist fusion and total right hip replacement, as well as ongoing chronic problems with his foot resulting from a foot drop secondary to a deep peroneal nerve injury. *See id.* Plaintiff contended that he attempted to continue working until he could no longer perform any duties, given the significant pain he continued to experience, specifically in his foot, ankle, back, hip, and knee. *See id.*

Plaintiff stated that he has very limited wrist movement from his wrist fusion surgery, which causes him difficulty with his right hand when attempting to perform tasks. *See* Tr. at 37. In terms of his ability to sit for periods of time, Plaintiff stated that he could tolerate sitting for up to 30 minutes before he needed to stand. *See id.* On the other hand, Plaintiff estimated that he could stand for twenty to thirty minutes at a time before needing to sit down. *See id.* at 39. Plaintiff testified that he can pick things up weighing between five and ten pounds, but primarily would use his left hand. *See id.* at 43. He also stated that he can carry things weighing ten pounds, but on the left side. *See id.*

In terms of medications, Plaintiff explained that he takes Darvocet as needed. *See* Tr. at 60. When examined by his representative Plaintiff testified that he lays down to seek relief from sitting, standing or walking due to this hip, back, knee, foot, and ankle pain. *See id.* at 61. Plaintiff explained that he lays down eight times a day on average for a half an hour at a time. *See id.* at 62.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

Title II of the Social Security Act provides for disability, survivors, and retire-

ment insurance benefits, *see* 42 U.S.C. §§ 401–33, while Title XVI provides benefits to aged, blind, and disabled persons with limited income and resources, *see id.* at §§ 1381–83d. *See Parker v. Barnhart,* 174 F.Supp.2d 920, 923 (N.D.Iowa 2001). Two social security programs are at issue: Disability Insurance, for qualified individuals who paid social security taxes for the relevant period, and Supplemental Security Income, for individuals who did not. The pertinent regulations are the same for both programs. *See Hill v. Massanari,* 155 F.Supp.2d 1250, 1252 (D. Kan.2001).

■ Plaintiff can receive benefits only if he is deemed "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In applying this standard, the Secretary has promulgated regulations setting forth a five step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 and 406.920. An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. *See id.* The Sixth Circuit has summarized the steps as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months,

and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Lyons v. Social Security Admin.*, 19 Fed. Appx. 294, 2001 WL 1110110, *5 (6th Cir. 2001), unpublished (citing *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir.1997), *and* 20 C.F.R. § 404.1520(b)-(f)). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *See Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

■ Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir.1990). The Court cannot reverse the ALJ's decision, even if substantial evi-

dence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See id.; Walters*, 127 F.3d 525, 532 (6th Cir.1997). Substantiality is based upon the record taken as a whole. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365 (6th Cir.1984).

■ The Court can remand a case to the Commissioner under sentence four of 42 U.S.C. § 405(g), sentence six of 42 U.S.C. § 405(g), or under both of these sentences. Sentence four provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence four remand provides the required relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994) (citation omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that

a remand is proper under Section 405." *Oliver v. Secretary of Health of Human Servs.*, 732 F.2d 155 (6th Cir.1984).

An ALJ's decision may be reversed and benefits immediately awarded only if the record adequately establishes a plaintiff's entitlement to benefits. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir.1994). Where an adequate record exists, the decision denying benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *See Faucher*, 17 F.3d 171, 176 (6th Cir.1994). Where further factual issues remain, the case should be remanded for further fact-finding. *See id.*

## VI. LAW AND ANALYSIS

In the instant action, Plaintiff presents this Court with the following four specific assignments of error and they are as follows:

1. The ALJ's finding that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in appendix 1, subpart P, regulations No. 4, is not supported by substantial evidence;

2. The ALJ's finding that Plaintiff's testimony was not credible and not supported by objective clinical and diagnostic findings is unsupported by substantial evidence;

3. The ALJ's assessment of Plaintiff's residual functional capacity is not supported by substantial evidence; and

4. The ALJ's finding that Plaintiff could perform the full range of sedentary work was not supported by substantial evidence.

ECF # 18 at iv–v. For purposes of reviewing Defendant's decision at issue, the undersigned will evaluate each of Plaintiff's first two assignments of error on an individual basis, and evaluate the third and fourth assignments of error together.

### A. Plaintiff's First Assignment of Error

In his first assignment of error, Plaintiff maintains that the ALJ erred in concluding that Plaintiff's medical problems, either alone or in combination, did not medically meet or equal a listed impairment. *See* ECF Dkt. # 18 at 10. In particular, Plaintiff contends that his combined impairments equal Listing 1.09(C) of 20 C.F.R. Part 404, Subpart P, Appendix 1, and the ALJ erred in finding to the contrary. *See id.* at 10–15. Plaintiff requests a reversal of the ALJ's decision because the ALJ did not consider Plaintiff's combined impairments which included residual problems from a hip injury, wrist injury, knee injury, and subsequent foot deformity. These impairments resulted in a right hip replacement, wrist fusion, and recommendations for possible back fusion, and a foot tendon transfer. *See id.* at 14–15

The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity. *See* 20 C.F.R. § 404.1525. Most of the listed impairments "are permanent or expected to result in death, or a specific statement of duration is made. For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* In the third step of the analysis to determine a claimant's entitlement to disability insurance benefits, it is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *See Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). To meet a listed impair-

ment, the claimant must show that his impairment meets all of the requirements for a listed impairment. *See Hale v. Secretary,* 816 F.2d 1078, 1083 (6th Cir.1987); 20 C.F.R. § 404.1525(d). An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity. *See Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

■ An impairment or combination of impairments is considered medically equivalent to a listed impairment " * * *if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Land v. Secretary of Health and Human Servs.,* 814 F.2d 241, 245 (6th Cir.1986)(per curiam). Generally, the opinion of a medical expert is required before a determination of medical equivalence is made. *See* 20 C.F.R. § 416.926(b). To show that an unlisted impairment or combination of impairments is medically equivalent to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan,* 493 U.S. at 531, 110 S.Ct. 885.

### 1. LISTING 1.09(C)

■ Listing 1.09 provides:

1.09 Amputation or anatomical deformity of (i.e. loss of major function due to degenerative changes associated with vascular or neurological deficits, traumatic loss of muscle mass or tendons and X-ray evidence of bony ankylosis at an unfavorable angle, joint subluxation or instability):

A. Both hands; or

B. Both feet; or

C. One hand and one foot.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.09. It must be kept in mind that this Court cannot reverse an ALJ's decision when that decision is supported by sub-

stantial evidence, even when there is substantial evidence in the record to support an opposite conclusion. *See Walters,* 127 F.3d at 528.

■ The medical evidence established that Plaintiff's right foot suffers from drop foot secondary to deep peroneal nerve injury and medical arch collapse, and that his fused right wrist is afflicted with post traumatic arthritis and carpal tunnel syndrome. *See* Tr. at 173–175(summary opinions of all three of Plaintiff's treating physicians created prior to Plaintiff's hearing before an ALJ). The ALJ only found that Plaintiff suffered from a foot deformity; he did not comment upon the condition of Plaintiff's right wrist or hand. *See id.* at 15. The medical evidence does establish that Plaintiff has very limited wrist movement from his wrist fusion surgery. *See id.* at 37.

Nevertheless, the undersigned finds that Plaintiff did not meet his burden of establishing that he met the criteria of Listing 1.09(C) as he points to no medical evidence showing that physicians opined that any of his wrist impairments caused the required disorganization described by the Listing in his right hand.

According to the evidence, although Plaintiff may have had problems bending his right wrist, there was no indication that he had a major loss of function in his right hand. Plaintiff acknowledged that he could manipulate his fingers. *See* Tr. at 15, 37. Also, Plaintiff testified that he could drive, and occasionally wash dishes, do laundry, sweep, and vacuum. *See id.* at 41–42, 52–53. The undersigned finds that the ALJ could reasonably conclude that Plaintiff had no loss of major function in his right hand given his acknowledged ability to manipulate his fingers. Therefore, the undersigned finds that substantial evidence supports the ALJ's finding that

Plaintiff's impairments did not *meet* Listing 1.09(C). *See id.* at 15.

 While the undersigned believes that substantial evidence exists to find that Plaintiff's impairments did not meet Listing 1.09(C), the undersigned questions the ALJ's decision on medical equivalence. *See* Tr. at 15. In the instant case, the ALJ did state that Plaintiff's impairments, individually, and in combination, did not meet any of the Listings. *See id.* The undersigned is aware of Sixth Circuit case-law holding that an ALJ's finding that a claimant's combination of impairments (plural) did not meet or equal the Listings is sufficient to show that the ALJ had considered the effect of the combination of impairments. *See Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir.1987); *Loy v. Secretary of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir.1990).

However, *Gooch* and *Loy* are distinguishable from the instant case. In *Gooch* and *Loy*, the Courts found that the ALJs conducted sufficient analyses of each of the claimants' impairments after carefully considering the entire record. In the instant case, the ALJ did not adequately analyze all of Plaintiff's impairments or explain how the combination of these impairments failed to demonstrate medical equivalence under Listing 1.09(C). *See* Tr. at 15. The extent of the ALJ's comments regarding Plaintiff's combination of impairments for medical equivalence purposes were that Plaintiff suffered from a foot deformity and had a remote history of right hip arthroplasty. *See id.* The ALJ did not factor in Plaintiff's extensive history and continuing pattern of difficulties with his right wrist, back, hip, or knee. *See id.*

Further, the ALJ did not use a medical expert to help him with this medical determination and did not explain if such an expert was necessary or why he did not use a medical expert. *See* Tr. at 15. It is true that the ALJ is given the discretion to decide whether or not to call on a medical advisor, and he can rely on the opinions of state examining physicians. *See* 20 C.F.R. §§ 404.1527(f)(2), 404.1529(b); *Reynolds v. Secretary of Health and Human Servs.*, 707 F.2d 927, 930 (6th Cir.1983). However, without further explanation and analysis, it seemed reasonable that the medical evidence could establish that Plaintiff's impairments in combination could equal Listing 1.09(C) such that a medical expert should have been called, or at least, the ALJ could have further explained his decision not to use a medical expert and his finding of a lack of medical equivalency. The medical record clearly establishes that Plaintiff experiences pain and popping in his severely arthritic surgically repaired right hip, and has a severely arthritic right wrist incapable of bending, a medical strained right knee due to altered gait mechanisms, a back afflicted with severe spondylolisthesis and requiring possible fusion, and a deformed foot. *See* Tr. at 173–175.

 An ALJ's decision may be reversed and benefits awarded only if the record adequately establishes a plaintiff's entitlement to benefits. · *See Newkirk v. Shalala,* 25 F.3d 316, 317 (6th Cir.1994). Where an adequate record exists, the decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *See Faucher v. Health and Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). Where further factual issues remain, the case should be remanded for further factfinding. *See id.* Here, due to Plaintiff's numerous and severe impairments, the undersigned believes that the record is insufficient, and therefore recommends that the instant case be RE-

MANDED for additional explanation and analysis of medical equivalence, preferably with the aid of a medical expert. *See* Tr. at 15.[2]

### B. Plaintiff's Second Assignment of Error

In his second assignment of error, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility, especially regarding the severity of his pain, symptoms and limitations. *See* ECF Dkt. # 18 at iv. Plaintiff argues that the objective medical evidence contained in the record, coupled with his testimony concerning his abilities, clearly establish disabling pain. *See id.* at 16. As support, Plaintiff points to his long history of medical problems and he cites to his testimony that he can sit or stand for no longer than 30 minutes at a time because of back, hip, and knee problems, and he must lie down for a half an hour or more at a time, up to eight times a day. *See* Tr. at 60–62. Plaintiff concludes that this testimony and the underlying medical record provide substantial evidence of disabling pain. *See* ECF Dkt. # 18 at 17.

 The undersigned notes that this Court affords great weight and deference to an ALJ's findings based on the credibility of the applicant since the ALJ is charged with the duty of observing a witness's demeanor and credibility and has the opportunity to do so. *See Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir.1987). It is not the province of this Court to "...try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528. Nevertheless,

an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *See id.* at 531.

 It should be noted that subjective complaints of pain can support a claim of disability. *See Wyatt v. Secretary of Health and Human Servs.*, 974 F.2d 680, 686 (6th Cir.1992). However, an ALJ is not required to accept a plaintiff's own testimony regarding his pain. *See Gooch*, 833 F.2d at 592. When a disability determination or decision that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record. *See* SSR 96–7p, 61 Fed. Reg. 34483, 34484 (1990). When determining credibility, in addition to the objective medical evidence, the ALJ must also consider:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

---

**2.** If the District Court adopts the undersigned's recommendation for further explanation and analysis on medical equivalence, the undersigned offers the following guidance to the ALJ. Upon remand, should the ALJ find that Plaintiff's impairments are medically equivalent to Listings 1.09(C), the ALJ need not proceed to Steps Four and/or Five of the

steps to determine entitlement to disability as disability is established without further inquiry. *See* 20 C.F.R. § 1520(d). However, should the ALJ determine that Plaintiff's impairments do not equal Listing 1.09(C), then the ALJ must proceed to Steps Four and Five in the sequential analysis to determine entitlement to disability. *See infra.*

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at 34485. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey v. Sec'y of HHS,* 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, the ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *See Walters,* 127 F.3d at 531.

█ The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 117 (6th Cir.1994); *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.1986).

█ In the instant case, the ALJ did not comment upon Plaintiff's pain level. Instead, he merely found that Plaintiff did not have any significant nonexertional limitations. *See* Tr. at 17. The ALJ's decision is bereft of any analysis of Plaintiff's pain allegations. *See id.* The record, however, contains medical records which document Plaintiff's continuing litany of medical impairments, and testimony that provide support for Plaintiff's allegation of disabling pain. Further, the record also establishes that Plaintiff missed work dozens of times due to his medical impairments, and eventually these led him to give up his career at Ford. *See id.* at 35. Because the ALJ did not analyze Plaintiff's allegations of disabling pain, the undersigned recommends that the instant case be REMANDED for explanation and analysis, preferably by a medical expert, of Plaintiff's allegations of disabling pain in accordance with the cited federal regulations and rules. *See id.* at 17.

**C. Plaintiff's Third and Fourth Assignments of Error**

In Plaintiff's third and fourth assignments of error, he avers that the ALJ improperly determined his Residual Functional Capacity (RFC) and erred in concluding that he could perform a full range of sedentary work. *See* ECF Dkt. # 18 at 17, 20. Plaintiff cites his impairments and asserts that each of his treating physicians document his significant problems in reference to pain, which his doctors recognized as resulting from the numerous orthopedic problems caused by various traumas. *See id.* Plaintiff also cites his own testimony before the ALJ regarding his pain and limited physical abilities, which include only being able to sit or stand for at most 30 minutes at a time, and the limitations imposed upon him because of his fused right wrist. *See id.* at 18. Plaintiff further asserts that the ALJ erred in not consulting with a vocational expert as the medical evidence established that he had nonexertional impairments in addition to the exertional impairments found by the ALJ. *See id.* at 21.

The ALJ found that Plaintiff had no nonexertional limitations and relied completely upon the Rule 202.27 of the Medical Vocational Guidelines in 20 C.F.R. Pt.

404, Subpt. P, App. 2 to determine that Plaintiff was not disabled. *See* Tr. at 16–18.

■ Sedentary work is defined as: (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). A nonexertional limitation is any impairment that does not directly affect the ability to perform strength activities. *See* 20 C.F.R. § 404.1569a(c)(1). Listed examples of nonexertional impairments include impairments that affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle and use the fingers for fine activities. *See id.* Pain can also be a nonexertional limitation. *See Gossett v. Bowen,* 862 F.2d 802, 806 (10th Cir.1988). When a claimant has both exertional and significant nonexertional limitations, the Medical Vocational Guidelines of Appendix 2 of 20 C.F.R. Part 404, Subpart P are not fully applicable. *See Damron v. Secretary of Health and Human Servs.,* 778 F.2d 279, 282 (6th Cir.1985). A vocational expert should be consulted when a claimant has severe combined exertional and nonexertional limitations. *See Siedlecki v. Apfel,* 46 F.Supp.2d 729, 732 (N.D.Ohio 1999), citing *Born v. Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th

Cir.1990). In cases of an unusual limitation on the ability to sit or stand, a vocational expert should be consulted to clarify the implications on the individual's occupational base. *See McCormick v. Secretary of Health and Human Servs.,* 861 F.2d 998, 1002 (6th Cir.1988) Reliance upon the Medical Vocational Guidelines requires reliable evidence that claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations. *See Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir.1987).

■ Substantial evidence does not support the ALJ's determinations that Plaintiff had the residual functional capacity to perform the full range of sedentary work and that he did not have nonexertional limitations. *See* Tr. at 16–18. The ALJ did not take into account Plaintiff's fused right wrist, which he cannot effectively bend, and which can thwart him from reaching, handling, pushing or pulling with his right hand. *See* ECF Dkt. # 18 at 18. Further, the ALJ did not address Plaintiff's allegations of pain, including his testimony that he cannot sit or stand for more than 30 minutes at a time, and more importantly that he needs to lay down for 30 minutes at time after he has been sitting or standing. *See* Tr. at 60–62.

Plaintiff's nonexertional conditions with his right wrist and his pain level, combined with Plaintiff's exertional limitations, would most likely affect Plaintiff's abilities to perform the full range of sedentary work. Without further medical explanation as to these conditions, preferably by a medical expert [3], the medical limitations that these conditions impose and the effects these conditions would have on Plain-

---

**3.** Upon remand, if the ALJ utilizes a medical expert on the equivalence issue and determines that Plaintiff's impairments do not equal Listing 1.09(C), the undersigned suggests that the ALJ also request the medical expert to opine on the effects that Plaintiff's nonexertional limitations, including his pain level and wrist problems, would have on Plaintiff's ability to perform a full range of sedentary work.

tiff's ability to perform a full range of sedentary work are unclear to the undersigned. Further, without the testimony of a vocational expert, it is also unclear that the combination of Plaintiff's exertional and nonexertional limitations would not affect the availability of jobs in the economy for Plaintiff to perform.

Based upon the foregoing, the undersigned recommends that the instant case be REMANDED for the ALJ to determine, with the aid of a medical expert and a vocational expert, whether Plaintiff's impairments prevent him from performing the full range of sedentary work and whether such work exists in significant numbers in the national economy for a person who has Plaintiff's exertional and nonexertional limitations. *See* Tr. at 16–18.

## VII. CONCLUSION AND RECOMMENDATION

Based upon a review of the record, the assignments of error and the law, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision that Plaintiff's impairments do not meet Listing 1.09(C). However, the undersigned believes that it is unclear as to whether Plaintiff's *combination* of impairments is equivalent to the criteria of Listings 1.09(C). Therefore, the undersigned recommends that the instant case be REMANDED for the ALJ to reconsider this issue and use a medical expert to assist him in his medical findings including explanation and analysis of Plaintiff's allegations of disabling pain in accordance with the cited federal regulations and rules.

Lastly, the undersigned recommends that the instant case be REMANDED for redetermination or further explanation as to the ALJ's decision finding that Plaintiff could perform the full range of sedentary work, considering all of Plaintiff's impair-

ments. The undersigned recommends that the ALJ review the evidence and determine, in consultation with a vocational expert, whether work exists in significant numbers in the national economy for a person who has Plaintiff's exertional and nonexertional impairments.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).